## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DONGKUK INTERNATIONAL, INC.,**<br>**19750 Magellan Drive, Torrance, CA 90502**<br><br>**and**<br><br>**SAE-JOO CHANG,**<br>**74-11 Yulgok-ro 3-gil**<br>**Jongno-gu, Seoul, Republic of Korea**<br><br>        **Plaintiffs,**<br><br>   **v.**<br><br>**DEPARTMENT OF JUSTICE**<br>**950 Pennsylvania Avenue, N.W.**<br>**Washington, DC 20530**<br><br><br><br>        **Defendant.** | **Case No. _____** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.      This is an action under the Freedom of Information Act, as amended, 5 U.S.C. § 552 ("FOIA"), for declaratory, injunctive, and other appropriate relief, seeking, principally, the immediate production of a document requested by Dongkuk International, Inc. ("DKI") and Sae-Joo Chang ("Mr. Chang") (collectively "Plaintiffs") from defendant the Department of Justice ("DOJ") that is of critical importance to Mr. Chang's appeal from a criminal conviction in the Republic of Korea ("Korea") for the offense of gambling in Las Vegas, Nevada, specifically, the

Republic of Korea Ministry of Justice's ("Korean MOJ") Request for Assistance letter ("RFA Letter") to the DOJ regarding its investigation of Mr. Chang.

2.     The RFA Letter was issued pursuant to the United States' Treaty with the Republic of Korea on Mutual Legal Assistance in Criminal Matters ("MLAT") and, upon information and belief, contains critical exculpatory evidence that, in pursuing the prosecution of Mr. Chang, the Korean MOJ violated the MLAT and Korean law.

3.     The Korean MOJ produced the DOJ's letter responding to the RFA Letter but has refused to produce the RFA Letter despite repeated requests for the same by Mr. Chang's Korean counsel.  Attached as **Exhibit 1** is a true and correct copy of the DOJ's November 9, 2015 letter responding to the RFA Letter ("Response Letter").

4.     Ten (10) days later, on November 19, 2015, the Korean MOJ utilized the evidence produced by the DOJ of Mr. Chang's gambling in Las Vegas to convict him in Korea of the offense of "habitual gambling" under Korean law; the trial court sentenced Mr. Chang to forty-two (42) months incarceration.

5.     During the course of Mr. Chang's trial, the prosecutors from the Korean MOJ made representations to the Korean trial court and Mr. Chang's Korean counsel regarding the contents of the RFA Letter and specifically the section of the RFA Letter which Plaintiffs seek disclosure of through this action.  Incredibly, however, the Korean MOJ never produced the actual RFA Letter (or even a redacted version of it) to the trial court, Mr. Chang, or his Korean counsel despite repeated requests by Mr. Chang and his counsel for the same.

6.     DOJ now has also refused to produce the RFA Letter without any basis for doing so. None of the FOIA exemptions apply to the RFA Letter because the purported contents of the RFA Letter at issue have already been disclosed to the public in open court in Seoul, Korea.  As

no exemptions apply, Plaintiffs are entitled under FOIA to receive an actual copy of the RFA Letter to use in Mr. Chang's appeal of his conviction for gambling.

7.      The DOJ has violated FOIA by: (i) improperly withholding the RFA Letter and (ii) failing to respond to DKI's and Mr. Chang's requests within the time limits mandated by FOIA.  To date, the DOJ has not produced any documents in response to Plaintiffs' December 2, 2015 FOIA request.

8.      Through this action, DKI and Mr. Chang seek a declaration that the DOJ's failure to respond to Plaintiffs' request violates FOIA and seek to compel the DOJ to produce the RFA Letter and documents concerning the same.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

10.     Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

11.     Declaratory relief is authorized by 28 U.S.C. § 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure.

## PARTIES

12.     Plaintiff Dongkuk International, Inc. is a California corporation with its principal place of business located at 19750 Magellan Drive, Torrance, California 90502.

13.     Plaintiff Sae-Joo Chang is a South Korean national who is currently incarcerated in his home country. Mr. Chang is the Chairman and former CEO of DKI's parent company, Dongkuk Steel Mill Co. Ltd., which is the second largest Electric arc furnace (EAF) steel producer in Korea and the world's forty-ninth largest steel maker among Word Steel Association

member companies. Dongkuk Steel Mill Co. Ltd. is publically traded on the Korean Stock Exchange.

14.     Defendant the DOJ is an independent United States government regulatory agency.  The DOJ is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## FACTUAL ALLEGATIONS

### A.     The United States Government's Investigation into DKI and Mr. Chang

15.     In 2011, the Department of Treasury ("DOT") Internal Revenue Service ("IRS") Criminal Investigation (CI) Division initiated an investigation into DKI and Mr. Chang for potential tax evasion primarily concerning tax years 2005-2009.  The IRS CI Division subsequently referred the matter to the DOJ for further investigation.

16.     Plaintiffs' undersigned counsel, Joseph Walker and Gabriel Colwell of Squire Patton Boggs (US) LLP (formerly named "Squire Sanders" at the time), represented both DKI and Mr. Chang in responding to the investigation by the IRS CI Division and DOJ.  During 2011-2012, undersigned counsel engaged with attorneys from the DOJ and agents from the IRS CI Division concerning this investigation and responded to inquiries pursuant to Federal Rule of Evidence 410.

17.     On July 27, 2012, the DOJ produced a critical document to Plaintiffs' counsel that DOJ had obtained during the course of its investigation into DKI and Mr. Chang.  The document was unquestionably privileged, notably even including a heading stating the document resulted from consultation with an attorney.  Plaintiffs' counsel then met with the Assistant U.S. Attorney (AUSA) who was leading the investigation in order to discuss the privileged document among other issues.

4

18.     On August 15, 2012, Plaintiffs' counsel formally protested the violations of the attorney-client privilege and the work product doctrine that occurred when the document was used in the government's investigation, and requested that the government provide sufficient information to suppress all "fruit of the poisonous tree" derived therefrom.   To evaluate the scope of the taint and the resulting suppression that would be necessary to cure it, Plaintiffs' counsel also requested that the government provide, *inter alia*, the following information:

   a.   Describe the protocol created by the investigation prior to seizure of the document about the manner in which to handle documents that appeared to be protected by the attorney-client privilege or the work product doctrine, including, but not limited to, production of briefing books, memos, or search criteria that describe the protocol.

   b.   Describe how the document originally was obtained, including, but not limited to, the date and time at which it was seized, the identity of the persons who seized it, the authority that allegedly justified the seizure of the document, how the document was stored after seizure, and where the document was stored after seizure.

   c.   Describe precisely where the document was seized, including, but not limited to production of photos of the place of seizure and reports describing the seizure.

   d.   List every person who has been given access to the document in any way, including, but not limited to, access to the original, access to a copy, access to a translation, access to a summary of the document in whole or in part, or access to a fragment of the document, copy, translation or summary.  (In the following items, the term "document" means the original, a copy, a translation, a summary, or a fragment of a copy, translation or summary).

   e.   List the number of translations of the document that have been made.

   f.   Provide copies of the translations of the document that have been made.

   g.   List the number of copies of the document that have been made.

   h.   For each person listed in (d), describe the circumstances under which the person was given access, including but not limited to,

i    The date on which access was given.

ii.  The length of time the person had access to the document.

iii.  Whether a translation was provided, and, if so, which translation.

iv.  What use the person made of the document.

v.  What happened to the document between the time the person was given access and the time the person no longer had access.

vi.  Any investigative item the person was involved in preparing having access including, but not limited to, a report, an analysis, a list of questions, or a draft of a report, analysis or list of questions

vii. List every individual with whom the person had contact, including but not limited to, contact by writing, by email, by phone, or by other communication medium after the  person was given access.  The list of individuals, includes, but is not limited to, every witness interviewed by the person after the person was given access.

Attached as **Exhibit 2** is a true and correct copy of the August 15, 2012 letter to the DOJ protesting the violations of the attorney-client and work product doctrines.

19.    The government never provided any of the information Plaintiffs' counsel requested regarding the privileged document and the resulting taint of the government's investigation.  Rather, in response, the DOJ provided a one-page letter on October 17, 2012 asking Plaintiffs' counsel to further explain the basis for Plaintiffs' assertion of privilege, and confirmed that Plaintiffs' could continue to discuss resolution of the investigation without waiving their ability to seek suppression at a later time.  Plaintiffs' counsel responded to the DOJ's letter on October 24, 2012, and then subsequently on November 30, 2012 provided a lengthy written submission pursuant to Federal Rule of Evidence 410 demonstrating that the tax evasion investigation was baseless and that the government's investigation should be declined for prosecution.  All interaction between Plaintiffs and the DOJ and IRS concerning the United States Government's investigation into Plaintiffs ceased in 2013.

20.    The result of that investigation was that no adverse criminal or civil proceedings, indictment, criminal information, civil or administrative litigation or otherwise, was ever

initiated against Mr. Chang or DKI by the United States Government.  Further, no additional tax was ever found to be due or owing by DKI or Mr. Chang, and no payment, fine, settlement, assessment or otherwise, was ever made by DKI or Mr. Chang to the United States Government in connection with the aforementioned investigation.  In sum, not one cent was paid by DKI or Mr. Chang to the United States Government as a result of the IRS's and DOJ's investigation.

**B.**      **The Korean MOJ's Request for Assistance and Mr. Chang's Conviction in Korea for the Offense of Gambling in Las Vegas, Nevada**

21.      Despite the investigation being dropped in the United States, in 2015, the Korean MOJ initiated criminal proceedings against Mr. Chang, seeking to convict him for the crime of "habitual gambling" under Korean law.

22.      To support its prosecution of Mr. Chang, the Korean MOJ issued a RFA Letter to the DOJ pursuant to the United States' Treaty with the Republic of Korea on Mutual Legal Assistance in Criminal Matters ("MLAT").  Pursuant to certain limitations, the MLAT between the Republic of Korea and the United States provides mechanisms for gathering and exchanging information to be used to enforce criminal laws.

23.      On November 9, 2015, in response to the RFA Letter, the DOJ provided the Korean MOJ with "partial evidence" [1]  consisting of (1) a letter prepared by Assistant U.S.

---

[1] Plaintiffs and their counsel only became aware of the RFA Letter and this evidence during the criminal trial of Mr. Chang in Korea.  The U.S. government obtained the evidence pursuant to administrative summonses issued by the IRS in April 2011 to the Bellagio and Wynn casinos in Las Vegas, Nevada.  Inexplicably, the IRS issued these summonses to the Bellagio and Wynn casinos without providing Mr. Chang or DKI any notice as legally required pursuant to 26 U.S.C. § 7609(a). This failure by the IRS denied Mr. Chang and DKI the opportunity to object to the summonses and/or file a motion to quash with the Court to prevent the Wynn and Bellagio from producing the subject records and thereby violated both Mr. Chang's and DKI's substantive due process rights and prejudiced Mr. Chang as the production of records ultimately resulted in his incarceration in Korea for the offense of "habitual gambling" under Korean law.

Attorney Charles E. Pell dated October 22, 2015 and (2) 8 DVDs of data that were obtained pursuant to IRS administrative summonses issued (without any notice to Mr. Chang or DKI) in April 2011 to the Bellagio and Wynn casinos in Las Vegas, Nevada as part of the DOT's investigation into DKI and Mr. Chang. On information and belief, and as stated in the DOJ's November 9, 2015 letter, two additional DVDs of data obtained pursuant to those same summonses were thereafter forwarded to the Korean MOJ.  (See **Exhibit 1**.)

24. The Korean MOJ utilized this evidence to prosecute Mr. Chang for the offense of "habitual gambling".  Mr. Chang was convicted on November 19, 2015. He was sentenced to 42 months incarceration and currently sits in prison while appealing the conviction and sentence.

25. Mr. Chang is currently appealing his conviction and sentence in the Korean judicial system. Mr. Chang's Korean counsel advises that his appeal before the Korean equivalent of the U.S. Supreme Court will be decided prior to September 20, 2016. Consequently, in order to utilize the RFA Letter in his appeal, Plaintiffs request that the RFA Letter be produced by the DOJ no later than August 31, 2016.

C. **The Exculpatory Nature of the Korean MOJ's Request for Assistance on Appeal**

26. Critical to Mr. Chang's appeal, and potentially a drastic reduction in his sentence, is a copy of the RFA Letter that the Korean MOJ used to procure the evidence against him at his criminal trial.

27. Under Korean law and the MLAT, the Korean MOJ had an affirmative duty to disclose the grounds on which it sought the assistance and the purposes for which the information or evidence would be used to the DOJ.

28. Article 7 of the MLAT demarcates clear limitations on the use of information obtained pursuant to a request for assistance and does not permit a Requesting State to "use any

information or evidence obtained under this Treaty in any investigation, prosecution, or proceeding *other than that described in the request without the prior consent of the Requested State*." MLAT, Article 7 (emphasis supplied).  Attached as **Exhibit 3** is a true and correct copy of the MLAT.

29.     The DOJ's November 9, 2015 letter accompanying its production of evidence to the Korean MOJ specifically states that, pursuant to Article 7, "authorization of the use of this material is limited to the purposes for which assistance has been requested and granted," requiring the Korean MOJ to obtain authorization from the DOJ to the extent this material is to be used for another purpose. (See **Exhibit 1**.)

30.     Therefore, the Korean MOJ could not request information from the DOJ and say that it would be used for one purpose and then use it to prosecute and punish Mr. Chang for gambling in Las Vegas, without obtaining the United States Government's consent to do so.

31.     Under the MLAT, "[t]he Central Authority of the Requested State may deny assistance if . . . the conduct which is the subject of the investigation, prosecution or proceeding in the Requesting State would not constitute an offense under the laws of the Requested State." MLAT, Article 3(1)(d) and (2).

32.     Korean counsel for Mr. Chang's strategy for appealing Mr. Chang's conviction centers on establishing that none of the evidence obtained pursuant to the Request for Assistance could be used to prosecute Mr. Chang for the offense of "habitual gambling" under Korean law because the Korean MOJ violated the MLAT by failing to inform the DOJ of its true intentions or to obtain the DOJ's prior consent to use the evidence to so prosecute Mr. Chang.

33.     On information and belief, and because gambling at casinos in Las Vegas is not a crime under United States law or under Nevada law, the RFA Letter failed to disclose and

apprise the DOJ that any evidence obtained would be used to prosecute Mr. Chang for gambling offenses under Korean law.

34.     If such is the case, the RFA Letter is exculpatory evidence critical to Mr. Chang's appeal of his criminal conviction for "habitual gambling" under Korean law and which could fully exonerate Mr. Chang's gambling conviction or greatly reduce his forty-two (42) month prison sentence.

35.     For this reason, Mr. Chang's Korean counsel has made numerous requests to the Korean MOJ for copies of the RFA Letter issued to the DOJ as well as copies of the evidence forwarded to the Korean MOJ from the DOJ under cover of the November 9, 2015 transmittal letter.   At trial, the Korean MOJ made partial disclosures, including the November 9, 2015 transmittal letter from DOJ, certain evidence obtained from the DOJ and made representations to the Korean trial court and Mr. Chang's Korean counsel regarding the contents of the RFA Letter and specifically the section of the RFA Letter which Plaintiffs seek disclosure of through this action.   In fact, during the course of Mr. Chang's trial, the prosecutors from the Korean MOJ specifically represented to the trial court in open court that the RFA Letter requested "materials related to money laundering and casino gambling of Sae-Joo Chang…" but did not actually disclose the RFA Letter to the trial court, Mr. Chang, or his Korean counsel despite repeated requests by Mr. Chang's counsel for the same.

36.     To date, the Korean MOJ still has only made the aforementioned partial disclosures and continues, to Mr. Chang's great prejudice, to inexplicably withhold the Korean MOJ's Request for Assistance letter to which the November 9, 2015 transmittal letter responds.

37.     Given what is believed to be the exculpatory nature of the Korean MOJ's Request for Assistance, its production is critical for Mr. Chang's appeal.

38.     Had Mr. Chang been charged in the United States and prosecuted criminally, U.S. prosecutors would have been required to turn over all exculpatory evidence in their actual or constructive possession pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), the Jencks Act, 18 U.S.C. § 3500, and their progeny. Failure to do so would have been a violation of the Due Process Clauses of the Fifth and Fourteenth Amendments.  The DOJ's participation in the conviction of Mr. Chang, and the continued withholding of a potentially exculpatory document during his appeal process raises significant constitutional, legal, and ethical implications as to the propriety of the DOJ's actions under principles of U.S. and International law; it is essentially tantamount to the DOJ utilizing the Korean MOJ as a proxy for the DOJ's owned failed criminal investigation concerning Mr. Chang.

     **D.**       **The FOIA Request to the DOJ and Communications with the DOJ**

39.     Because the Korean MOJ continued to refuse to produce the RFA Letter to Mr. Chang, attempts to obtain the correspondence from the DOJ were initiated.

40.     On December 2, 2015, counsel for DKI and Mr. Chang submitted a FOIA request to the DOJ (the "FOIA Request") requesting records related to the Korean MOJ Request for Assistance and the evidence provided to the Korean MOJ.  A copy of the FOIA Request is attached as **Exhibit 4**.

41.     Pursuant to 5 U.S.C. § 552(a)(6)(A), the DOJ had twenty (20) working days to make an initial determination as to whether it would release the documents requested. However, counsel for DKI and Mr. Chang never received any response from the DOJ to the FOIA request.

42.     In early June 2016, counsel for DKI and Mr. Chang followed-up by telephone with an individual at DOJ's FOIA Office named "Ms. Francine Cante" regarding the FOIA request. Ms. Cante confirmed that the DOJ had received the request and would respond.

43.     On June 14, 2016, counsel for DKI and Mr. Chang spoke by telephone with Mr. Samer Korkor of the DOJ, who wrote the November 9, 2016 Response Letter, to directly request production of the RFA Letter. During this conversation, the DOJ was advised of the impending appeal and the urgency of a response to the FOIA Request. Given the time constraints of the appeal[2], counsel for DKI and Mr. Chang limited the scope of the FOIA Request to a single document – the RFA Letter. Counsel for DKI and Mr. Chang memorialized this conversation in a follow-up email to Mr. Korkor, a true and correct copy of which is attached as **Exhibit 5**.

44.     On June 16, 2016, Mr. Korkor informed Plaintiffs' counsel that the DOJ could not provide the RFA Letter at issue "pursuant to [the DOJ's] policy and the requirements of [the] treaty with Korea."  Plaintiffs' counsel promptly responded to Mr. Korkor by explaining their position that the letter was not subject to any confidentiality provisions. The information sought by the Request for Assistance had been made public in Korea as part of Mr. Chang's prosecution and could therefore be used for any purpose under Article 7 of the MLAT. The June 14 and 16, 2016 correspondence between the DOJ and counsel for DKI and Mr. Chang is reflected in **Exhibit 5**.

45.     As the DOJ had failed to provide a timely response to the FOIA Request and explicitly denied disclosure of the RFA Letter, counsel for DKI and Mr. Chang filed a FOIA appeal on June 30, 2016. Attached as **Exhibit 6** is a true and correct copy of the June 30, 2016 appeal.

46.     On July 1, 2016, counsel for DKI and Mr. Chang received an email from the DOJ's FOIA unit acknowledging receipt of the appeal. Later that same morning, counsel for DKI

---

[2] Per Mr. Chang's Koran counsel, the deadline referenced in this conversation was subsequently extended.

and Mr. Chang received further correspondence from the DOJ informing them that the FOIA Request was not properly logged by the DOJ when it was received on December 2, 2015. Nonetheless, the DOJ stated that the FOIA Request would be queued and processed as though it had been received on December 2, 2015.  The DOJ requested further evidence of client consent in order to perform the search for responsive documents, which was promptly provided to the DOJ's satisfaction.

47.     On July 5, 2016, counsel for DKI and Mr. Chang received further correspondence from Ms. Priscilla Jones, Supervisory Administrative Specialist, confirming that the appeal was received on July 1, 2016 and that her office would notify counsel of the decision on the appeal as soon as they could.  A true and correct copy of the July 5, 2016 correspondence is attached as **Exhibit 7**.

48.     On July 8, 2016, counsel for DKI and Mr. Chang received correspondence from the DOJ acknowledging receipt of the December 2, 2015 FOIA Request which again admitted that the FOIA Request was not logged by DOJ until June 24, 2016 due to an "inadvertent administrative error." A true and correct copy of the July 8, 2016 correspondence is attached as **Exhibit 8**.

49.     On July 20, 2016, Plaintiffs' counsel spoke by telephone with Mr. John Cunningham of the DOJ's FOIA Unit regarding the FOIA Request. Mr. Cunningham represented that the FOIA Request was being processed as though it was submitted on December 2, 2015 and that the documents had been requested from the relevant department within the DOJ but had not yet been received by the FOIA Unit for review.  With respect to the RFA Letter – the only document urgently sought – Mr. Cunningham informed Plaintiffs' counsel that he had not yet reviewed the RFA Letter but that he anticipated that the DOJ would not disclose the letter on the

grounds that the letter was protected from disclosure based on Exemption 7(B) and 7(D) of the FOIA.

50.     Plaintiffs' counsel explained to Mr. Cunningham that no exemptions are applicable to the RFA Letter. Plaintiffs' counsel further explained that the Korean MOJ's RFA Letter should be disclosed under the FOIA as the MOJ's prosecution of Mr. Chang was completed and the requested information has been made public in Korea in connection with the prosecution of Mr. Chang. As such, the information was not confidential or protected from disclosure pursuant to Article 7 of the MLAT or any of the citied FOIA exemptions.

51.     Exemption 7(B), permitting withholding where the production "would deprive a person of a right to a fair trial or an impartial adjudication" also is inapplicable here where Mr. Chang's trial has already concluded. To the contrary, the withholding of the evidence actually deprives Mr. Chang of a fair trial by denying him what is believed to be exculpatory evidence.

52.     Nor does Exemption 7(D), seeking to protect the disclosures and identity of confidential sources, apply.  By providing Mr. Chang with the November 9, 2015 letter from the DOJ, the Korean MOJ has already disclosed that it issued the RFA letter. The information provided by the Korean MOJ in the RFA Letter was not produced pursuant to a qualifying criminal or national security investigation and, therefore, is subject to disclosure.

53.     Further to the extent to which DOJ may argue that Exemption 7(A) applies, this is incorrect. Exemption 7(A), protecting documents from disclosure where the production "could reasonably be expected to interfere with enforcement proceedings" cannot apply to these circumstances.  The DOJ cannot articulate a harm to the Korean enforcement proceeding, other than the disclosure of the RFA letter could establish that Mr. Chang was prosecuted in violation

of Korean law and the MLAT treaty.  Sustaining a withholding on these grounds would be unconscionable and improper under FOIA.

54.     To the extent to which there is any information in the RFA Letter subject to exemption under FOIA, it can be redacted and the critical portion of the RFA Letter identifying the grounds of the Korean MOJ's request to DOJ, i.e., whether those grounds included that the MLAT request was made for the purpose of prosecuting Mr. Chang for gambling in the U.S., unquestionably is not subject to exemption and must be disclosed under FOIA.  Indeed, these purported grounds have already been disclosed to the public during the trial court proceedings. That the Korean MOJ and now the DOJ refuse to produce the actual RFA Letter so that Mr. Chang can confront the evidence against him is unconscionable and provides firm grounds for Plaintiffs' assertion and belief that contrary to the Korean MOJ's representations to the Korean trial court, that the RFA Letter does not actually state that the MLAT request was made for the purpose of investigating Mr. Chang for gambling related offenses under Korean law.  If Plaintiffs' position is correct, then the MLAT request and evidence obtained was made in violation of the provisions of the MLAT, the Korean MOJ made false representations to the Korean courts regarding the same, and Mr. Chang's conviction for "habitual gambling" under Korean law was procured by fraud.

55.     During the conversation with Mr. Cunningham, Plaintiffs' counsel also renewed Plaintiffs' request that the DOJ provide a letter setting forth the basis for withholding the RFA Letter in order to narrow the issues for the Court should litigation be commenced.  Counsel reiterated its willingness to narrow the scope of the FOIA Request to alleviate any burden on the DOJ in responding to the Request and to work with the DOJ to focus solely on the documents critical to Mr. Chang's appeal of his gambling conviction.  In response to Plaintiffs' request for

an estimated completion date on their FOIA Request and specifically review of the single RFA

Letter, Mr. Cunningham advised that he was unable to provide an estimated completion date as

to DOJ's review of either the entire FOIA Request or the RFA Letter because his office had not

yet received them for review.  Given DOJ's inability to provide a date of production for the RFA

Letter or even resolution of Plaintiffs' request as to the RFA Letter, Plaintiffs' counsel advised

Mr. Cunningham that given the impending deadline for Mr. Chang to file his appeal to the

Korean Supreme Court that absent production of the RFA Letter, Plaintiffs would be forced to

file suit to enforce the FOIA Request and seek production of the RFA Letter.  Attached as

**Exhibit 9** is a true and correct copy of July 21, 2016 from Plaintiffs' counsel to the DOJ

confirming the July 20, 2016 telephonic conversation.

56.     On July 28, 2016, Plaintiffs filed a request for expedited processing solely as to

the RFA Letter.  Attached as **Exhibit 10** is a true and correct copy of this request.

57.     Under 5 U.S.C. § 552(a)(6)(A)(ii), the DOJ had 20 working days from its receipt

of the appeal, or until August 1, 2016, to make a determination with respect to the appeal.  On

July 28, 2016, the DOJ issued a letter in response to the Appeal informing Plaintiffs that it is still

processing their FOIA request[3] and "[a]s no adverse determination has yet been made by the

Criminal Division, there is no action for this Office to consider on appeal. … If you are

dissatisfied with the Criminal Division's final response, you may appeal again to this Office."

---

[3]     In contrast to the DOJ, its counterparts at the DOT have promptly responded to DKI's
and Mr. Chang's FOIA requests for similar information. The DOT FOIA Request was issued on
December 2, 2015 and following communications with DOT reissued on July 13, 2016. By
July 21, 2016, the DOT had completed its search for responsive documents and responded to the
FOIA Request.  Responsive documents were in hand by July 27, 2016. Unfortunately, per the
DOT's response letter, documents relating to the Korean MOJ's Request for Assistance are in
the sole possession of the DOJ.  Attached hereto as **Exhibit 11** is a true and correct copy of the
DOT's response to Plaintiffs' FOIA request dated July 21, 2016.

The DOJ further advised Plaintiffs that "FOIA authorizes requesters to file a lawsuit when an agency takes longer than the statutory time period to respond. <u>See</u> 5 U.S.C. § 552(a)(6)(C)(i)." Attached as **Exhibit 12** is a true and correct copy of the DOJ's July 28, 2016 letter.

58.     Under 5 U.S.C. § 552(a)(6)(A)(i), the DOJ had 20 working days from its receipt of the FOIA Request to make a determination regarding the request. FOIA expressly provides that a requester "shall be deemed to have exhausted his administrative remedies . . . if the agency fails to comply with the applicable time limit provisions" governing its response to a FOIA request or an appeal. 5 U.S.C. § 552(a)(6)(C). As DOJ acted on the appeal on July 29, 2016 and failed to respond to the FOIA Request within the statutory deadline, DKI and Mr. Chang are therefore deemed to have exhausted their administrative remedies under FOIA. *See* 5 U.S.C. § 552(a)(6)(C)(i).

59.     On August 1, 2016, Plaintiffs' counsel again contacted Mr. Cunningham of the DOJ's FOIA Unit regarding the FOIA Request and request to expedite that request. Mr. Cunningham advised that his office still had not received the documents responsive to the FOIA Request from the DOJ's Criminal Division and therefore could not provide an estimated date of completion for the request or whether the DOJ would agree to expedite the request. Given the exigent circumstances of Mr. Chang's impending appeal deadline, that the DOJ has had eight (8) months to review and process the FOIA Request, and that the DOJ's FOIA Unit has not even been provided the documents to review, Plaintiffs' counsel advised that Plaintiffs would file suit and a motion for preliminary injunction to enforce the FOIA Request. In order to expedite matters and ensure that the appropriate person at the DOJ received the complaint and moving papers, Plaintiffs' counsel offered to provide a courtesy copy of Plaintiffs' summons, complaint and motion for preliminary injunction by email to Mr. Cunningham. Mr. Cunningham (while

not agreeing to accept service of process on behalf of the DOJ) thanked Plaintiffs' counsel for the offer and accepted the offer of the aforementioned courtesy copy.

60.     On August 2, 2016, the DOJ denied Plaintiffs' request for expedited processing as to the RFA Letter.  Attached as **Exhibit 13** is a true and correct copy of the DOJ's letter denying Plaintiffs' expedited processing request.

## FIRST CLAIM FOR RELIEF

### (Failure to Make a Determination Within the Statutory Time Limits)

61.     Plaintiffs reallege and incorporate all of the allegations in the foregoing paragraphs 1-60 as though fully set forth herein.

62.     DOJ is an agency subject to FOIA, 5 U.S.C. § 552(f), and therefore must release, in response to a FOIA request, any disclosable records in its possession at the time of the request and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

63.     On December 2, 2015, Plaintiffs properly submitted to the DOJ the FOIA Request, requesting records that are public records subject to FOIA.

64.     On June 30, 2016, Plaintiffs properly filed the FOIA Appeal with the DOJ Office of Information Policy after the DOJ failed to provide any substantive response to Plaintiffs concerning the FOIA Request within the mandatory time limit prescribed by 5 U.S.C. §552(a)(6)(A)(ii).

65.     Under 5 U.S.C. §§ 552(a)(6)(A)(ii), DOJ was required to decide the appeal within 20 business days of receipt.

66.    In response to Plaintiffs' FOIA Appeal, on July 29, 2016, the DOJ acted on the appeal and informed Plaintiffs that the DOJ Criminal Division is still processing Plaintiffs' FOIA Request and has not yet made a determination.

67.    The failure of the DOJ to make a determination as to Plaintiffs' FOIA Request is not the result of exceptional circumstances, but is due to the failure of the DOJ to properly process the request.

68.    The DOJ's failure to make a determination within the prescribed time limit is improper and violates FOIA.

## SECOND CLAIM FOR RELIEF

### (Failure to Provide Responsive Records)

69.    Plaintiffs reallege and incorporate the allegations in the foregoing paragraphs 1-68 as though fully set forth herein.

70.    The DOJ has indicated that it intends to refuse to produce the RFA Letter based upon 5 U.S.C.  §552(b)(7), which protects from disclosure certain records or information "complied for law enforcement purposes."

71.    The "law" to be enforced in these circumstances was a foreign law against gambling at a casino in Nevada, an activity that is not subject to civil or criminal enforcement in the United States.

72.    Upon information and belief, the Korean MOJ did not inform the DOJ that it was investigating an offense that was not subject to civil or criminal enforcement in the United States.

73.    None of the stated exemptions of the DOJ are applicable to Plaintiffs' FOIA Request.

19

74.     DOJ has no lawful basis under FOIA for withholding the documents asked for in the FOIA Request whether the withholding is pursuant to a stated exemption or the failure to properly process the request.

75.     Therefore, the DOJ's withholding of the RFA Letter violates FOIA.

**WHEREFORE**, Plaintiffs DKI and Mr. Chang respectfully request that this Court:

A.     Declare that the DOJ's withholding of the Korean MOJ's Request for Assistance letter and related communications is unlawful under FOIA;

B.     Declare that the DOJ's failure to make a determination with respect to the FOIA Request within the applicable time period is unlawful under FOIA;

C.     Enter an affirmative injunction directing the DOJ to produce the Korean MOJ's Request for Assistance letter without any further delay and no later than the end of August 2016, so that it can be utilized by Mr. Chang to appeal his conviction of "habitual gambling" under Korean law to the Korean Supreme Court;

D.     Order the DOJ to process immediately the requested records in their entirety;

E.     Provide for expeditious proceedings in this action;

F.     Award Plaintiffs reasonable attorneys' fees and other litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E) and other applicable statute or authority;

G.     Grant Plaintiffs any further relief that this Court deems just and proper.

Dated:  August 4, 2016                    Respectfully submitted,

                                          SQUIRE PATTON BOGGS (US) LLP

                                          By: /s/ *Rachael A. Harris*

                                          _____
                                                  Gabriel Colwell
                                                  Joseph Walker
                                                  Rachael A. Harris

                                          GABRIEL COLWELL
                                          (pro hac vice admission pending)
                                          555 S. Flower Street, Suite 3100
                                          Los Angeles, CA 90071
                                          (213) 689-5126
                                          gabriel.colwell@squirepb.com

                                          JOSEPH WALKER
                                          D.C. Bar No. 452911
                                          RACHAEL A. HARRIS
                                          D.C. Bar No. 983044
                                          2550 M Street Northwest
                                          Washington, D.C. 20037
                                          (202) 457-6000
                                          joseph.walker@squirepb.com
                                          rachael.harris@squirepb.com

                                          *Attorneys for Plaintiffs*
                                          *DONGKUK   INTERNATIONAL,   INC.   and*
                                          *SAE-JOO CHANG*