**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DONGKUK INTERNATIONAL, INC.,** | ) | |
| **19750 Magellan Drive, Torrance, CA 90502** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **SAE-JOO CHANG,** | ) | |
| **74-11 Yulgok-ro 3-gil** | ) | |
| **Jongno-gu, Seoul, Republic of Korea** | ) | |
| | ) | |
| | ) | **Case No. 1:16-cv-01584** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DEPARTMENT OF JUSTICE** | ) | |
| **950 Pennsylvania Avenue, N.W.** | ) | |
| **Washington, DC 20530** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND**
**MEMORANDUM IN SUPPORT**

Pursuant to Federal Rules of Civil Procedure, Rule 65, plaintiffs Dongkuk International, Inc. ("DKI") and Mr. Sae-Joo Chang ("Mr. Chang") (collectively "Plaintiffs"), through their counsel of record, respectively move for entry of a preliminary injunction to enjoin defendant United States Department of Justice's unlawful attempts to impede Plaintiffs' efforts to obtain *one-specific* agency record - the Republic of Korea Ministry of Justice's April 2015 Request for Assistance letter to the Department of Justice.  Plaintiffs seek an order requiring defendant Department of Justice ("DOJ") to immediately process Plaintiffs' Freedom of Information Act

request and disclose the requested document within 5 days of the Court's order; or in the alternative, to serve its substantive response to Plaintiffs' Freedom of Information Act request within 5 days of the Court order.

The grounds of this motion are set forth in the accompanying memorandum of points and authorities.  Exigent circumstances exist necessitating the DOJ's production of the requested document by August 31, 2016.  For this reason, Plaintiffs request that the Court, pursuant to Local Rule 65.1(d), schedule a hearing on this application for a preliminary injunction at the Court's earliest available date.

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A**</u>
<u>**PRELIMINARY INJUNCTION**</u>

Plaintiffs Dongkuk International, Inc. ("DKI") and Sae-Joo Chang ("Mr. Chang") (collectively "Plaintiffs"), through their counsel of record, respectively submit this memorandum of points and authorities in support of their motion for a preliminary injunction.

## I.   <u>PRELIMINARY STATEMENT</u>

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the expedited processing and release of one-single agency record from defendant United States Department of Justice ("DOJ") that is of critical importance to Mr. Chang's appeal of a criminal conviction in the Republic of Korea ("Korea") for the offense of gambling in Las Vegas, Nevada.   Specifically, Plaintiffs seek the Republic of Korea Ministry of Justice's ("Korean MOJ") April 2015 Request for Assistance letter ("RFA Letter") to the DOJ regarding its investigation of Mr. Chang.   (*See* Declaration of Gabriel Colwell ["Colwell Decl."], ¶ 14, Exhibit ["Ex."] 4, [Plaintiffs' FOIA Request to the DOJ dated December 2, 2015]; *Id.*, ¶ 27, Ex. 10 [Plaintiffs' Expedited Processing Request as to solely the RFA Letter].)

Mr. Chang is currently appealing his gambling conviction and sentence in the Korean judicial system.   Mr. Chang's counsel of record in Korea, Mr. Jongchul Jang ("Jang") of the law firm Kim & Chang, located in Seoul, Korea, advises that the appeal is now before the Korean equivalent of the U.S. Supreme Court and is presently set to be decided prior to September 20, 2016.   (*See* Declaration of Jongchul Jang ["Jang Decl."], ¶¶ 7-9, Ex. 4.)   Korean counsel for Mr. Chang's strategy for appealing Mr. Chang's conviction centers on establishing that none of the evidence obtained pursuant to the Request for Assistance could be used to prosecute Mr. Chang for the offense of "habitual gambling" under Korean law because the Korean MOJ violated the MLAT by failing to inform the DOJ of its true intentions or to obtain the DOJ's prior consent to

- 3 -

use the evidence to so prosecute Mr. Chang.  (*Id*., at ¶¶ 3-9, Exs. 2-4.)  Mr. Chang's Korean counsel has advised that the RFA Letter is critical to Mr. Chang's appeal, and that its production will substantially increase Mr. Chang's likelihood of prevailing on appeal or at a minimum will significantly reduce his forty-two month prison sentence.  (*Id*., ¶¶ 7-8, Ex. 4.)  Mr. Chang's Korean counsel also has advised that given the impending deadline for Mr. Chang's appeal that the RFA Letter must be produced by the DOJ as soon as possible and, in any event, no later than August 31, 2016, for it to be incorporated into submissions in support of his appeal to the Korean Supreme Court.  (*Id*. ¶ 9.)

The Korean MOJ issued the RFA Letter pursuant to the Mutual Legal Assistance in Criminal Matters ("MLAT") between United States of America and Republic of Korea.  (*See* Colwell Decl., ¶ 11, Ex. 3, MLAT.)  The Korean MOJ produced the DOJ's written response to the Korean MOJ's Request for Assistance as well as portions of the evidence the Korean MOJ received from the DOJ.  (*See* Jang Decl., ¶ 3-4, Ex., **2,** DOJ's November 9, 2015 letter to the RFA Letter ("Response Letter"); Colwell Decl., ¶ 3, Ex. 1.)  Ten (10) days later, on November 19, 2015, the Korean MOJ utilized the evidence produced by the DOJ of Mr. Chang's gambling in Las Vegas to convict him in Korea of the offense of "habitual gambling" under Korean law; the trial court sentenced Mr. Chang to forty-two (42) months incarceration.  (*See* Jang Decl., ¶ 3.)

During the course of Mr. Chang's trial, the prosecutors from the Korean MOJ made representations to the Korean trial court and Mr. Chang's Korean counsel regarding the contents of the RFA Letter and specifically the section of the RFA Letter which Plaintiffs seek disclosure of through this action.  (*Id*. ¶¶ 4-6.)  Incredibly, however, the Korean MOJ never produced the

actual RFA Letter (or even a redacted version of it) to the trial court, Mr. Chang, or his Korean counsel despite repeated requests by Mr. Chang and his counsel for the same. (*Id.*)

Given the Korean MOJ's refusal to produce the actual RFA Letter, so that Mr. Chang could confront the purported evidence against him, Plaintiffs sought to obtain the RFA Letter and other related materials pursuant to their rights under FOIA.  On December 2, 2015, Plaintiffs submitted a FOIA Request to the DOJ requesting records related to the Korean MOJ's Request for Assistance and the evidence provided to the Korean MOJ.  (*See* Colwell Decl., ¶ 14, Ex. 4.) Yet, more than eight (8) months later (well outside the 20-day statutory response requirement), the DOJ FOIA Unit has not yet even received the documents from the relevant section of the DOJ to review and process the request, nor has the DOJ offered a substantive response to Plaintiffs' FOIA Request as mandated by statute. (*Id.*, ¶¶ 15-32. Exs. 5-13.)

As explained more fully below, DOJ's refusal to process Plaintiffs' FOIA request clearly violates FOIA.  DOJ is refusing to produce a document that has already been made public in Korea; there can be no basis under FOIA or otherwise for withholding this document from Mr. Chang for use in his appeal.

Because time is of the essence as to Mr. Chang's rights and DOJ's obligations, and because the information at issue concerns a matter of irreparable harm to Mr. Chang and substantial and uncontested public interest, Plaintiffs seek the Court's expedited consideration of this matter and entry of an order compelling DOJ to immediately process Plaintiffs' FOIA Request and disclose the RFA Letter within 5 days, or at a minimum, order the DOJ to serve its substantive response to Plaintiffs' FOIA Request within 5 days.

## II.    STATEMENT OF FACTS

### A.    The United States Government's 2011 Investigation Into DKI and Mr. Chang

In 2011, the Department of Treasury ("DOT") Internal Revenue Service ("IRS") Criminal Investigation (CI) Division initiated an investigation into DKI and Mr. Chang for potential tax evasion primarily concerning tax years 2005-2009.  (*See* Colwell Decl. ¶ 4.) IRS CI Division subsequently referred the matter to the DOJ for further investigation.  (*Id*.)

The undersigned counsel, Joseph Walker and Gabriel Colwell of Squire Patton Boggs (US) LLP (formerly named "Squire Sanders" at the time), represented both DKI and Mr. Chang in responding to the investigation by the IRS CI Division and DOJ.  (*Id.* at ¶ 5.)  Between 2011 and 2012, Plaintiffs' counsel engaged with attorneys from the DOJ and agents from the IRS CI Division concerning the investigation and responded to inquiries pursuant to Fed. R. Evid. Rule, 410.  (*Id.*)  During the course of that investigation, Plaintiffs allege that the DOJ committed various violations of Plaintiffs' substantive due process rights.  (*Id.* at ¶¶ 6-8, Ex. 2, and ¶ 12 at fn. 1.)

All interaction with the DOJ and IRS concerning the United States Government's investigation ceased in 2013.  (*Id.* at ¶9.)  No adverse criminal or civil proceedings, indictment, criminal information, civil or administrative litigation or otherwise, was ever initiated against DKI or Mr. Chang by the United States Government.  (*Id.*)  Further, no additional tax was ever due or owing by DKI or Mr. Chang, and no payment, fine, settlement, assessment or otherwise, was ever made against DKI or Mr. Chang.  (*Id.*)  In sum, neither DKI nor Mr. Chang paid one-cent to the United States Government in connection with the IRS's and DOJ's investigation. (*Id.*)

**B.**     **Korean MOJ's Request for Assistance and Mr. Chang's 2015 Conviction In Korea For The Offense of  Gambling in Las Vegas, Nevada**

Despite dropping the investigation in the United States, in 2015, the Korean MOJ, Seoul Central District Prosecutor's Office, initiated criminal proceedings against Mr. Chang, seeking to convict him for the Korean crime of "habitual gambling" as well as a separate offense for embezzlement.  (*Id.*, ¶ 10; *see* Jang Decl., ¶¶ 3-6.)  Under Korean law (with some exceptions), it is illegal for a Korean national to gamble in or outside Korean territory, including Las Vegas, Nevada (where it is legal to gamble in the United States).  (*See* Jang Decl., ¶ 3.)

To gather evidence against Mr. Chang, Korean MOJ issued the subject RFA Letter by way of the MLAT to the DOJ.  (*Id.* ¶ 4.) On November 9, 2015, DOJ responded to the Korean MOJ's Request for Assistance and produced the following "partial evidence": (1) a letter prepared by Assistant U.S. Attorney Charles E. Pell dated October 22, 2015, and (2) 8 DVDs the U.S. government obtained pursuant to an April 2011 administrative summonses issued by the IRS to the Bellagio and Wynn casinos in Las Vegas, Nevada.  *Id*.  The Response Letter also states two additional DVDs of data obtained pursuant to those same summonses were forthcoming.  (*Id.* ¶ 4, Ex. 2.)

The IRS issued these summonses to the Bellagio and Wynn casinos without providing Mr. Chang or DKI any notice as legally required pursuant to 26 U.S.C. § 7609(a)(1).  (*See* Colwell Decl., ¶ 12 at fn. 1.)  This failure by the IRS denied Plaintiffs the opportunity to object to the summons and/or file a motion to quash with the Court to prevent the Wynn and Bellagio from producing the subject records.  Plaintiffs and their counsel only first became aware of this evidence during the criminal trial of Mr. Chang in Korea in November 2015.  (*Id.*)

Korean MOJ utilized the evidence provided by DOJ  to prosecute Mr. Chang for gambling in Las Vegas.  (*See* Jang Decl. ¶ 4.)  On November 19, 2015, Korean MOJ convicted

Mr. Chang of habitual gambling and sentenced him to forty-two months imprisonment.  (*Id.* ¶ 3.)  Both the trial and Mr. Chang's conviction are a matter of public record.  Mr. Chang currently sits in prison while appealing the conviction and sentence. (*Id.*)  Korean counsel advises Mr. Chang's appeal is now pending before the Korean equivalent of the U.S. Supreme Court and will be decided on or before September 20, 2016.  (*Id.* ¶ 9.)

### C.    The Exculpatory Nature of Korean MOJ's RFA Letter On Appeal

Critical to Mr. Chang's appeal is a copy of the Korean MOJ's Request for Assistance Letter.  The letter procured the very evidence used to prosecute Mr. Chang for gambling in the criminal trial.  (*Id.*, ¶ 3.)  Mr. Chang's Korean counsel suspects, with good reason, the RFA Letter proves Korean MOJ violated the MLAT by misleading the DOJ about the scope of its investigation and its intent to prosecute Mr. Chang for gambling in Las Vegas.  (*Id.*, ¶¶ 6-9, Ex. 4.)

Specifically, under Korean law and the MLAT, Korean MOJ has an affirmative duty to disclose in any request for assistance to the DOJ the grounds on which it seeks assistance and the purpose for which it will use the information or evidence.  Article 7 of the MLAT demarcates clear limitations on the use of information obtained pursuant to a Request for Assistance and does not permit a Requesting State to "use any information or evidence obtained under this Treaty in any investigation, prosecution, or proceeding *other than that described in the request without the prior consent of the Requested State*."  MLAT, Article 7 (emphasis supplied).  (*See* Colwell Decl., ¶ 11 , Ex. 3.)  Likewise, DOJ's November 9, 2015 response letter accompanying its production of evidence to the Korean MOJ expressly states, pursuant to Article 7, "authorization of the use of this material is limited to the purposes for which assistance has been requested and granted."  (*Id.,* ¶ 3, Ex. 1.)   Accordingly, the Korean MOJ cannot request

information from DOJ under the pretext of one purpose and then use the information for a different purpose without first obtaining the United States' consent to do so.

Because Mr. Chang was prosecuted for gambling in Las Vegas, Nevada, Mr. Chang's Korean counsel believes the grounds for Korean MOJ's Request for Assistance did not include legal gambling in Las Vegas for a number of reasons.  First, if it had, the United States would be less likely to comply with the request because, as the MLAT provides "[t]he Central Authority of the Requested State may deny assistance if . . . the conduct which is the subject of the investigation, prosecution or proceeding in the Requesting State would not constitute an offense under the laws of the Requested State."  MLAT, Article 3(1)(d) and (2).  Second, when questioned on this very point, the Korean MOJ represented to the court (first the trial and subsequently the intermediary appellate court) that the RFA Letter pursuant to the MLAT specifically requested "**materials related to** money laundering and **casino gambling of Sae-Joo Chang**…"  This is reflected in Footnote 45 to the record of the intermediary appeal of the judgement, which was rendered in May 2016.  (*Id. ¶ 5, Ex. 3.*)  Yet inexplicably, and despite repeated requests, the Korean MOJ has refused to produce even a redacted copy of the actual RFA Letter, i.e., the actual evidence so that Mr. Chang's Korean counsel could review and analyze it for himself to determine whether it comported with the requirements of Article 7 of the MLAT and Korean law.  (*Id.*, ¶¶ 6-9, Ex. 4.)

Korean counsel's strategy for appealing Mr. Chang's conviction centers on establishing that none of the evidence obtained pursuant to the subject RFA Letter is admissible to prosecute Mr. Chang for the offense of "habitual gambling" under the MLAT and Korean Law.  (*Id. ¶¶ 7-8, Ex. 4.*)  If the Korean MOJ violated the MLAT by failing to inform DOJ of its true intentions or did not obtain DOJ's consent to use the evidence to prosecute Mr. Chang for gambling in Las

Vegas, the RFA Letter is exculpatory evidence critical to Mr. Chang's appeal and could exonerate Mr. Chang of the gambling conviction or greatly reduce his forty-two month prison sentence.  Indeed, if Plaintiffs' position is correct, then the MLAT request and evidence obtained was made in violation of the provisions of the MLAT, the Korean MOJ made false representations to the Korean courts regarding the same, and Mr. Chang's conviction for "habitual gambling" under Korean law was procured by fraudulent representations by the Korean MOJ to the Korean courts.

### D.    Plaintiffs' FOIA Request And Request For Expedited Processing

Having failed to obtain the RFA Letter from the Korean MOJ, Plaintiffs attempted to obtain the correspondence from the DOJ.  On December 2, 2015, Plaintiffs' counsel submitted a FOIA Request to the DOJ (the "FOIA Request") requesting records related to the Korean MOJ Request for Assistance and the evidence DOJ provided to Korean MOJ.  (*See* Colwell Decl., ¶14, Ex. 4.)

Pursuant to 5 U.S.C. § 552(a)(6)(A), DOJ had twenty (20) working days to make an initial determination as to whether it would release the documents requested.  However, DOJ failed to respond in the prescribed time.

In early June 2016, Plaintiffs' counsel followed-up by telephone with the DOJ regarding the status of the FOIA Request.  (*Id*., ¶ 15.)  DOJ confirmed receipt of the request and advised it would respond.  (*Id*.)  Next, on June 14, 2016, Plaintiffs' counsel spoke by telephone with Mr. Samer Korkor of the DOJ's Office of International Affairs, the individual who actually wrote the November 9, 2016 Response Letter, to directly request production of the RFA Letter.  (*Id*., ¶ 16.)  During this conversation, Plaintiffs' counsel advised Mr. Korkor of the impending appeal and the urgency of a response to the FOIA Request.  (*Id*., ¶¶ 16-17, Ex. 5.)   Given the time constraints

of the appeal, Plaintiffs' counsel limited the scope of the FOIA Request to a single document –
the RFA Letter.  (*Id*.)

> ### E.   DOJ's Refusal To Process Plaintiffs' FOIA Request Or Disclose The Single Agency Record Critical To Mr. Chang's Appeal

On June 16, 2016, Mr. Korkor informed Plaintiffs' counsel DOJ could not provide the
RFA Letter at issue "pursuant to [the DOJ's] policy and the requirements of [the] treaty with
Korea."  (*Id*.)  Plaintiffs' counsel explained the RFA Letter was not subject to any confidentiality
provisions because it had been disclosed to the public in Korea as part of Mr. Chang's
prosecution in Korea.  (*Id*.)

As the DOJ had failed to provide a timely response to the FOIA Request, and explicitly
denied disclosure of the RFA Letter when directly requested, Plaintiffs' counsel filed a FOIA
appeal on June 30, 2016.  (*Id*., ¶ 19, Ex. 6.)

On July 1 and 5, 2016, DOJ's FOIA Unit acknowledged receipt of the appeal.  (*Id*., ¶ 20-
22, Exs. 7-8.)   Under separate cover, the DOJ also advised it had not properly logged Plaintiffs'
original FOIA Request in December 2015., but rather had misplaced it until June 2016  (*Id*.)  The
DOJ assured the FOIA Request would be queued and processed as though it had been received
on December 2, 2015, the day Plaintiffs' served it.  (*Id*.)

On July 20, 2016, Plaintiffs' counsel spoke by telephone with John Cunningham of the
DOJ's FOIA Unit regarding Plaintiffs' FOIA Request.  (*Id*., ¶ 23-26, Ex. 9.)  Mr. Cunningham
represented the FOIA Request was being processed and the documents had been requested from
the relevant department within the DOJ but had not yet been received by the FOIA Unit for
review.  (*Id*.)  With respect to the RFA Letter – the only document urgently sought Mr.
Cunningham informed Plaintiffs' counsel that his office had not yet reviewed the RFA Letter but
that the DOJ typically treats MLAT requests as confidential and that he anticipated that the DOJ

would not disclose the letter on the grounds that the letter was protected from disclosure based on Exemption 7(B) and 7(D) of the FOIA. (*Id.*)

In response, Plaintiffs' counsel explained Plaintiffs' position that no FOIA exemptions applied to the RFA Letter because it had already been made public in Korea, and that to the extent there was any information in the RFA Letter that the DOJ considered confidential that the DOJ could simply redact those portions of the RFA Letter.   (*Id.*)   Plaintiffs' counsel also renewed Plaintiffs' request that the DOJ provide a letter setting forth the basis for withholding the RFA Letter in order to narrow the issues for the Court should litigation be required.   (*Id.*) Plaintiffs' counsel reiterated his willingness to narrow the scope of the FOIA Request to alleviate any burden on the DOJ in responding to the Request and to work with the DOJ to focus solely on the *one-single* document critical to Mr. Chang's appeal of his gambling conviction.   (*Id.*)

On July 28, 2016, Plaintiffs' counsel filed a formal request for expedited processing solely as to the RFA Letter.   (*Id.*, ¶ 27, Ex. 10.)

On July 29, 2016, the DOJ issued a letter in response to the FOIA Appeal advising it is still processing Plaintiffs' FOIA Request[1] and "[a]s no adverse determination has yet been made by the Criminal Division, there is no action for this Office to consider on appeal. … If you are dissatisfied with the Criminal Division's final response, you may appeal again to this Office." (*Id.*, ¶ 29, Ex. 12.)   DOJ further advised "FOIA authorizes requesters to file a lawsuit when an

---

[1]   In contrast to the DOJ, its counterparts at the DOT have promptly responded to DKI's and Mr. Chang's FOIA requests for similar information. The DOT FOIA request was issued on December 2, 2015 and following communications with DOT reissued on July 13, 2016.  (*See* Colwell Decl., ¶ 28, Ex. 11.)  Seven days later, DOT had completed its search for responsive documents and responded to the FOIA Request.  (*Id.*)  Responsive documents were in hand by July 27, 2016.  Unfortunately, per the DOT's response letter, documents relating to the Korean MOJ's Request for Assistance are in the sole possession of the DOJ.  (*Id.*)

agency takes longer than the statutory time period to respond. *See* 5 U.S.C. § 552(a)(6)(C)(i)." (*Id.)*

On August 1, 2016, Plaintiffs' counsel again contacted Mr. Cunningham of the DOJ's FOIA Unit regarding the FOIA Request and request to expedite that request.  (*Id.*, ¶ 30.)  Mr. Cunningham advised that his office still had not received the documents responsive to the FOIA Request from the DOJ's Criminal Division and therefore could not provide an estimated date of completion for the request or whether the DOJ would agree to expedite the request.  Given the exigent circumstances of Mr. Chang's impending appeal deadline, that the DOJ has had eight (8) months to review and process the FOIA Request, and that the DOJ's FOIA Unit has not even been provided the documents to review, Plaintiffs' counsel advised that Plaintiffs would file suit and a motion for preliminary injunction to enforce the FOIA Request. (*Id.*, ¶ 31.)

On August 2, 2016, the DOJ denied Plaintiffs' request for expedited processing as to the RFA Letter.  (*Id.*, ¶ 32, Ex. 13.)

III.   **ARGUMENT**

   A.   **The Court Has Authority To Order The DOJ To Produce The Subject RFA Letter Or In The Alternative, To Order The DOJ To Provide A Substantive Response To Plaintiffs' FOIA Request**

The Court's jurisdiction to consider this matter and grant appropriate relief is clear.  The FOIA provides, in pertinent part:

> "On complaint, the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.  In such a case the court shall determine the matter de novo . . . ."

5 U.S.C. § 552(a)(4)(B).  In considering Plaintiffs' request for the entry of a preliminary injunction compelling DOJ process Plaintiffs' request to review the subject RFA Letter and

- 13 -

disclose it, the court must assess four factors: 1) Plaintiffs' likelihood of success on the merits; 2) irreparable injury to plaintiff; 3) burden on other's interests; and 4) the public interest.  I *Judicial Watch v. US Dept. of Homeland Security*, 514 F.Supp.2d 7 (D.D.C. Cir 2007) citing *Katz v. Georgetown Univ.,* 246 F.3d 685, 687-88 (D.C.Cir. 2001) (internal quotations omitted). Consideration of these factors in this case establishes Plaintiffs' entitlement to injunctive relief.

**B.      Because FOIA Does Not Exempt The Subject RFA Letter From Disclosure, Plaintiffs Will Prevail On The Merits of Their FOIA Request**

**1.      FOIA Mandates DOJ Produce The Subject RFA Letter**

FOIA is a federal freedom of information law enacted to allow public access to information and documents controlled by the United States government.  It is mandatory for the government to release requested records *unless* the records fall into one of the nine statutory exemptions outlined in the FOIA itself.  *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 221 (1978) (unless the requested material is within a statutory exemption, "FOIA requires that records and material in the possession of federal agencies be made available on demand to any member of the general public"); *Vaughn v. Rosen,* 484 F.2d 820, 823, note 21,  (D.C.Cir. 1973) (citing FOIA's "overwhelming emphasis upon disclosure").

This court has repeatedly stated these statutory exemptions must be construed narrowly to provide maximum access consonant with the overall purpose of the Act.  *See Getman v. N. L. R. B.*, 450 F.2d 670, 672 (D.C. Cir. 1971), stay denied, 404 U.S. 1204 (1971). *See also Bristol-Myers v. F. T. C.*, 424 F.2d 935, 938 (D.C. Cir. 1970), cert. denied, 400 U.S. 824 (1970); *M. A. Shapiro & Co. v. S. E. C.*, 339 F.Supp. 467, 469 (D.D.C. 1972).  "Where there is a balance to be struck, Congress and the courts have stacked the scales in favor of disclosure and against exemption."  *See Mead Data Central, Inc. v. United States Dep't of Air Force, supra* note 6, 566 F.2d 242, 259 (D.C.Cir. 1977).  If only part of a document needs withholding under an

exemption, the government must segregate the exempt passages and disclose the remainder.  *See Vaughn, supra* note 21, 484 F.2d at 825 ("[T]he agency may not sweep a document under a general allegation of exemption …. It is quite possible that part of a document should be kept secret while part should be disclosed."); *Mead Data Central, supra* note 6, 566 F.2d at 260 ("The focus of FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material.").

It is undisputed that the requested RFA Letter is an agency record obtained and controlled by the DOJ.  Accordingly, absent exemption, the DOJ has an affirmative duty to produce the RFA Letter.

## 2.    DOJ Has Not, And Cannot, Identify An Exemption Authorizing It To Withhold The RFA Letter

When the government declines to disclose a document the burden is upon the agency to prove de novo in trial court that the information sought falls within one of the FOIA exemptions.  *See* 5 U.S.C. § 552(a) (3) (1970); *Vaughn*, *supra*, 484 F. 2d at 823.  Here, DOJ has not and cannot meet this burden.

DOJ has provided an informal response to the FOIA Request.  It mistakenly claims the subject RFA Letter is subject to Exemptions 7(B) and 7(D).  (*See* Colwell Decl., ¶ 23-26, Ex. 9.)  No basis whatsoever exists for any enforcement or confidentiality exemption.  Korean MOJ has already utilized the information procured by the RFA Letter to prosecute Mr. Chang for gambling in Las Vegas under Korean law.  (*See* Jang Decl., ¶¶ 3-9, Exs. 3 & 4.)  Korean MOJ convicted and sentenced Mr. Chang for the crime.  (*Id*., ¶ 3.)  Korean MOJ disclosed the evidence to the public during the criminal proceedings against Mr. Chang in Korea.  (*Id. ¶* 5, Ex. 3.*)  Indeed, during the course of the trial, Korean MOJ represented to the trial court and the public (and subsequently the intermediary appellate court) that the RFA Letter pursuant to the

MLAT specifically requested "**materials related to** money laundering and **casino gambling of Sae-Joo Chang**…"  This is reflected in Footnote 45 to the record of the intermediary appeal of the judgement, which was rendered in May 2016.   (*Id. ¶* 5, Ex. 3.*)*   Yet inexplicably, and despite repeated requests, the Korean MOJ has not produced a copy of even a redacted version of the actual RFA Letter, so that Mr. Chang's Korean counsel could review and analyze it for himself to determine whether it comported with the requirements of Article 7 of the MLAT and Korean law.   (*Id.*, ¶¶ 6-9, Ex. 4.)  Korean MOJ even produced the DOJ's Response Letter to the Request for Assistance, which was the answer to the request. (*Id.*, ¶¶ 4, Ex. 2.)   Short of disclosing a copy of the actual RFA Letter – *which is the very information Mr. Chang requires to defend himself on appeal in Korea* – the information, evidence, and correspondence related to the RFA Letter is well-known by the parties and the public.

Specifically, Exemption 7(B) protects "records or information compiled for law enforcement purposes, the disclosure of which would deprive a person of a right to a fair trial or an impartial adjudication."  This exemption does not apply here.  To the contrary, DOJ's withholding the subject RFA Letter deprives Mr. Chang a compelling defense on appeal.  If Mr. Chang can demonstrate MOJ violated the MLAT by misleading the DOJ about the scope of its investigation and intent to prosecute Mr. Chang for only gambling in Las Vegas, Nevada, the evidence could exonerate him, or at a minimum, reduce his forty-two month sentence.

Similarly, Exemption 7(D) does not protect the RFA Letter.  Exemption 7(D) provides protection for "records or information compiled for law enforcement purposes, which could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority, or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law

enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source."  In analyzing this provision, courts must determine if the information comes from a "source" and if so, whether there is an agreement, explicit or implicit, the government will not divulge the information.  *See U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993).

Nothing in the record suggests the RFA Letter identifies a confidential source.  Korean MOJ wrote the RFA Letter and sent it to the DOJ, so the source, Korean MOJ is well known.  Moreover, Korean MOJ divulged the information procured by the RFA Letter to prosecute Mr. Chang of habitual gambling under Korean law.  (*See* Jang Decl., ¶¶ 5-9, Exs. 3 and 4.)  Korean MOJ voluntarily produced DOJ's response letter to the subject RFA Letter as well as the DOJ's production, i.e., the DVDs from the Wynn and Bellagio documenting Mr. Chang's gambling in Las Vegas.  Assuming arguendo the RFA Letter does identify a confidential source, which it does not, DOJ can redact the source's identity.  Plaintiffs simply request disclosure of the stated grounds of Korean MOJ's request for assistance to the DOJ as set forth in the RFA Letter.

In sum, DOJ has not, and cannot, articulate harm to Korean MOJ's enforcement proceeding against Mr. Chang if it produces the RFA Letter.  Korean MOJ prosecuted Mr. Chang under Korean law for "habitual gambling" arising solely from activities in Las Vegas, Nevada.  The only purported "harm" in disclosing the RFA Letter is the anticipated exculpatory evidence that may exonerate Mr. Chang of his conviction in Korea.  But this is not a "harm" at all, rather, if Plaintiffs' position is correct, then the MLAT request and evidence obtained was made in violation of the provisions of the MLAT, the Korean MOJ made false representations to the Korean courts regarding the same, and Mr. Chang's conviction for "habitual gambling" under Korean law was procured by fraud.  Demonstrating that a fraud was perpetrated upon the

- 17 -

Korean judicial system by the Korean MOJ is not a "harm" but a public service that the DOJ should support.

### C. The Requested Injunction To Prevent the DOJ from Withholding A Potentially Exculpatory Document Protects The Public Interest.

This is now the third time the DOJ has violated Plaintiffs' substantive rights. First, DOJ utilized a record of his consultation with an attorney as the sole basis to open a misguided and ultimately fruitless two year criminal investigation into Plaintiffs for alleged tax evasion. (Colwell Decl., ¶¶ 4-9, Ex. 2.) Second, the DOJ produced records to the Korean MOJ that the DOJ obtained in violation of Plaintiffs' substantive due process rights in the United States by failing to provide Mr. Chang or DKI any notice as legally required pursuant to 26 U.S.C. § 7609(a)(1).  (*Id.*, ¶ 12 at fn. 1.)  This is particularly troubling because the government had previously acknowledged its obligation to provide notice of summons to third parties and had, in fact, provided over sixty (60) separate administrative summonses to Plaintiffs' counsel during 2011 as part of its investigation into DKI and Mr. Chang. (*Id.*)  This failure by the IRS denied Plaintiffs the opportunity to object to the summonses and/or file a motion to quash with the Court to prevent the Wynn and Bellagio from producing the subject records.

Without question, therefore, the government repeatedly violated Mr. Chang's and DKI's fundamental due process rights.  And, compounding those violations, the government then, without notice to Mr. Chang, DKI or their counsel, sent those unlawfully obtained records to the Korean MOJ, which were used to convict and incarcerate Mr. Chang.  The government should never have sent copies of the records it obtained in violation Mr. Chang's and DKI's rights to the Korean MOJ.  Its decision to do so is tantamount to using the Korean MOJ as a proxy for the government's own failed prosecution of Mr. Chang in the U.S.

While there is no way to fully remedy the government's due process violations that have already occurred and directly harmed Mr. Chang, the government can and should immediately seek to mitigate the damage it has caused by producing the RFA Letter.

Instead, the DOJ has now for a third time violated Plaintiffs' rights by refusing to comply with its obligations under FOIA as previously explained herein.

The DOJ's participation in the conviction of Mr. Chang for gambling in Las Vegas under Korean law and DOJ's continued withholding of a potentially exculpatory document during Mr. Chang's appeal process raises significant constitutional, legal, and ethical implications as to the propriety of the DOJ's actions under principles of U.S. and International law.   Ordering an injunction will protect the public interest by enforcing due process safeguards for all members of the public.  Further, the court should grant the injunction to ensure that in situations such as this, where the government tramples on the rights of private citizens, that they will have recourse to obtain relief.

**D.    Because The RFA Letter Is Exculpatory Evidence And Mr. Chang's Criminal Conviction Appeal Will Be Decided In Less Than Two Months, Mr. Chang Will Suffer Irreparable Injury If The Injunction Is Not Granted**

Today, Mr. Chang sits in a Korean prison for gambling in Las Vegas.  In less than 50 days, the Korean Supreme Court will decide Mr. Chang's appeal challenging his conviction and forty-two month prison sentence.  Despite the gravity of this situation, DOJ has not issued a substantive response to Plaintiffs' eight-month-old FOIA Request.  If the Court does not grant this injunction, and the DOJ fails to produce the subject RFA Letter by August 31, 2016, it will deprive Mr. Chang the opportunity to utilize this critical evidence in support of his appeal.

**E.    Because Plaintiffs Have Limited The Scope of Their FOIA Request To One-Single Document, The Injunction Does Not Prejudice The DOJ**

Plaintiffs have limited their request and extensively met and conferred with DOJ over the last six (6) weeks in the hopes of voluntarily obtaining the disclosure of one-single document – the RFA Letter.  (*See* Colwell Decl., ¶¶ 16-18, Ex. 5 and ¶¶ 23-26, Ex. 9, ¶¶ 30-31.)  Plaintiffs also served a formal expedited processing request, which DOJ summarily denied.  (*Id.*, ¶¶ 27 and 32, Exs. 10 & 13.)  There is no reason the DOJ cannot review this single document and produce it within the next 5 days.  Indeed, given a much shorter timeframe DOJ's counterparts at DOT were able to fully process Plaintiffs' FOIA request.  (*See* Colwell Decl., ¶ 28, Ex. 11.)  Because the DOJ has an affirmative obligation to respond to FOIA Requests and Plaintiffs' simply request the review and production of *one-single document*, this injunction will not prejudice the DOJ.

**IV.    CONCLUSION**

Time is of the essence as to Mr. Chang's rights and DOJ's obligations, and because the information at issue concerns a matter of irreparable harm to Mr. Chang and substantial and uncontested public interest, Plaintiffs respectfully request the Court's expedited consideration of this matter and entry of an order requiring DOJ to immediately process Plaintiffs' FOIA Request and disclose the RFA Letter within 5 days of the Court's order on Plaintiffs' Motion, or in the alternative order DOJ serve its substantive response to Plaintiffs' FOIA Request within 5 days.

010-8253-5067/3/AMERICAS

Dated:  August 4, 2016

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

By:  */s/ Rachael A. Harris*

_____

Gabriel Colwell
Joseph Walker
Rachael A. Harris

GABRIEL COLWELL
(pro hac vice admission pending)
Squire Patton Boggs (US) LLP
555 S. Flower Street, Suite 3100
Los Angeles, CA 90071
(213) 689-5126
gabriel.colwell@squirepb.com

JOSEPH WALKER
D.C. Bar No. 452911
RACHAEL A. HARRIS
D.C. Bar No. 983044
Squire Patton Boggs (US) LLP
2550 M Street Northwest
Washington, D.C. 20037
(202) 457-6000
joseph.walker@squirepb.com
rachael.harris@squirepb.com

*Attorneys for Plaintiffs*
*DONGKUK   INTERNATIONAL,   INC.   and*
*SAE-JOO CHANG*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing will be served on all named Defendants by private process server, along with the Summons and copy of the Complaint.

*/s/ Rachael A. Harris*
_____

- 21 -