# EXHIBIT 3

# CERTIFIED TRANSLATION

 

# Seoul High Court

# Criminal Division 1

# Judgment

Case     2015No3304     A. Violation of Act on the Aggravated Punishment, etc. of Specific Economic Crimes (embezzlement)

[Charge partially acknowledged against the Defendant Sae Joo Chang: Business related embezzlement, Charge partially acknowledged against the Defendant Jong-won Kim: Aiding and abetting the violation of Act on the Aggravated Punishment, etc. of Specific Economic Crimes (embezzlement)]

B. Violation of Act on the Aggravated Punishment, etc. of Specific Economic Crimes (Breach of duty, partially acknowledged charge of business related embezzlement)

C. Violation of Act on the Aggravated Punishment, etc. of Specific Economic Crimes (Property Moving to Foreign Country)

D. Violation of Act on Regulation and Punishment of Criminal Proceeds Concealment

E. Breach of trust to receive bribe

F. Habitual gambling

G. Violation of Foreign Exchange Transactions Act

H. Business related embezzlement

Defendant     1. A~G. Sae Joo Chang (531108-0000000), Chairman of Dongkuk Steel Mill Co., Ltd.

Address: 74-11 Yulgongno 3-gil, Jongno-gu, Seoul (Hwa-dong)

Standard Land of Registration: 207 Choryang-dong, Dong-gu, Busan



D. The count on the habitual gambling of the defendant Sae Joo Chang (The part acquitted in the original trial, release, charges dismissed) [Charges Paragraph 2-C.]

### 1) Judgment of the original trial

The original trial decided the defendant was not guilty on the count of habitual gambling on the ground that there was a lack of evidence to find the habitual nature of the defendant's gambling, and out of individual gambling of the Offense List (6)[37], the original court found only Counts No.13 and 14 to be simple gambling offenses,[38] and decided to dismiss the charges of No.1 through 6 as the facts of the charges are not specific and the procedure of prosecution was in violation of the provisions of the law and therefore invalid, and sentenced the decision of acquittal on the charges from No.7 through 12 on the ground of expiration of statute of limitation.

### 2) Amendment of the complaint in this trial

The prosecutor in this trial maintained the offense as habitual gambling including the part convicted at the original trial, and made a motion to permit the amendment of the complaint, changing the charges in an interchanging way as written in the Attachment 1 Charges No.2 Paragraph C, which was permitted by the court, and as a result the original decision could not be maintained any further because the object of the judgment was changed.

Although there is a reason for ex officio reversal as above, the prosecutor's argument on the mistake of fact and misunderstanding of a legal doctrine still becomes the subject of decision of this court, and therefore, will be reviewed.

### 3) Judgment of this court

A) Judgment on the admissibility of the Criminal Judicial Mutual Assistance material submitted by the prosecutor to this court.

The prosecutor was provided with the material related to gambling through the U.S. Department of Justice immediately before the closing argument of the original trial, about the defendant that the U.S. IRS (hereafter 'IRS'[39]) received from Bellagio Hotel and Wynn Hotel pursuant to the procedure of

---

[37]  Refers to Offense List (6) judged at the original trial.
[38]  The defendant has not appeal on the mistake of fact and misunderstanding of a legal doctrine regarding the above guilty part.
[39]  Abbreviation of 'Internal Revenue Service'



 

mutual legal assistance in criminal matters, but was not able to submit it into evidence due to the trial schedule, and at this trial, submitted the documents and records provided by the U.S. Department of Justice (Exhibits 1323- 4 through 10, hereafter 'gambling-related evidences' ), pursuant to the document on the procedure of request for mutual legal assistance in criminal matters (Exhibit 1323-1 through 3, hereafter, "evidence related to procedures") and the procedure of mutual legal assistance in criminal matters, and the defendant did not agree to admitting it into evidence.

   Only the evidences related to gambling among each of the above evidences are those that prove the charges (excluding the IRS Summons and the attached documents, and the replies of each of the above hotels to IRS), and the procedure-related evidences are those that support the lawfulness of the procedure of collecting evidences related to gambling, and the evidences related to gambling that prove the charges that are the facts to be proven, ① shall be collected by a lawful procedure (including mutual legal assistance in criminal matters) because Article 308 Paragraph 2 of the Criminal Procedure Act applies, and ② their admissibility should be found as provided by the Criminal Procedure Act even when they are found to have been collected by a lawful procedure.

### (1) Judgment on the lawful nature of the procedure of collecting evidences including the mutual legal assistance in criminal matters

   (A) Not every stage of the mutual legal assistance in criminal matters needs to be disclosed in order to judge the lawfulness of the collecting evidences including the procedure of mutual legal assistance in criminal matters, and it is sufficient that the request for mutual legal assistance in criminal matters was made lawfully overall based on the Korea-U.S. Treaty on Mutual Legal Assistance in Criminal Matters (hereafter 'the Mutual Assistance Treaty') and the Act on International Judicial Mutual Assistance in Criminal Matters (hereafter the 'Mutual Assistance Act'), and the central agency of the requested country secured the applicable documents and records, etc. and lawfully replied to the requested country.

   (B) "A lawful procedure" in collecting evidence under Article 308 Paragraph 2 of the



 

Criminal Procedure Act constitutes the requirement of admissibility, so the prosecutor has to specifically argue and prove its existence, but this is about 'the fact of the lawsuit' and does not require strict proof and a liberal proof may be deemed sufficient.[40] And the lawfulness of the evidence collection procedure does not have to be supported by other admissible evidences but it is probable to consider that it can be judged by comprehensively reviewing all the circumstances revealed in the records along with other evidences.

(C) The evidences related to procedures[41] are found to be genuine as official documents[42] prepared by each person in charge at the Korean Department of Justice, the U.S. Federal Prosecution and the Department of Justice to perform the matters requested for mutual legal assistance in criminal matters pursuant to the Mutual Assistance Act and Mutual Assistance Treaty, and it is reasonable to consider that they of course are admissible as documents prepared by other especially reliable circumstances of Article 315 Paragraph 3 of the Criminal Procedure Act (Even if not admitted pursuant to the above provision, the above evidences are not hearsay evidences in their relationship with the charges, so there is no room for the hearsay rule to apply, but they may become the material to support the lawful nature of the evidence collection procedure).

On the other hand, among Exhibits 1325-5,6,7,8, the formal IRS summon to submit material and the attached documents against Bellagio Hotel and Wynn Hotel are the documents that IRS

---

[40] Supreme Court 7.26.2012 Sentence 2012Do2937 decision states that 'the especially reliable state' under the Article 312 Paragraph 4 of the Criminal Procedure Act is when there is a concrete and eternal circumstance to assure the reliability or arbitrariness of the statement and where there is almost no room for false intervention in the details of the statement and in the preparation of the report. And since such 'especially reliable state' constitutes the requirement of admissibility, the prosecutor should argue and prove in increate its existence, but since this is about the facts in litigation, it does not require strict proof but liberal proof is sufficient.
'Lawful procedure' under Article 308-2 of the Criminal Procedure Act is also about the facts in litigation, and not about charges, so the same legal doctrine may apply.

[41] Each of the above evidences do not prove that the charges are true and so therefore cannot constitute a hearsay evidence, and the 'document prepared by other especially reliable circumstances' provided by Article 315 Paragraph 3 of the Criminal Procedure Act means 'the document with circumstantial guarantee of high reliability to such an extent that whether to give the opportunity for cross-examination is not even a problem' among the certificate documents of official authority official authority and ordinary documents in the course of business authority listed under Article 315 Paragraph 1 and Paragraph 2 of the Criminal Procedure Act, and therefore the official documents are prepared by the applicable agencies in Korean and the U.S. pursuant to the Mutual Assistance Treaty and it would not be necessary to give the opportunity for cross-examination.

[42] According to the details of replies from the U.S. Federal prosecution and the person in charge at the U.S. Department of Justice (Exhibit 1323-2,3), the above document does not seem to be the document saved on the DVD, and seems to have been delivered by email or by person as its written details.



 

requested each of the above hotels to submit information on the defendant, etc. pursuant to the relevant U.S. laws for IRS to process its tasks, and the replies from each of the above hotels to IRS are the documents that each of the above hotels sent while sending relevant material at the request of IRS and are subject to sanctions if it provided false information, so it is reasonable to consider each of the above documents to be admissible since they were prepared by the other especially reliable circumstances under Article 315 Paragraph 3 of the Criminal Procedure Act(Even if not so, the above evidences may be used as material to judge the lawfulness of the evidence collection procedure and not as the evidence to prove the charges).

(D) According to below circumstances found by examining the evidences that this court lawfully admitted and investigated based on the above standards (or the materials that can support the lawfulness of the evidence collection procedure even if not admitted) and other records, the procedure of collecting evidences related to gambling including the mutual legal assistance in criminal matters procedure is found to be lawful, and it is probable to consider the evidences collected by such procedures as lawfully collected evidences.

① Article 1 Paragraph 2 of the Mutual Assistance Treaty include, 'provision of documents, records and evidences' in the scope of Mutual Assistance, and Article 5 Paragraph 2 of the Mutual Assistance Act includes the provision of documents and records in the scope of mutual assistance.[43]

② In the request for mutual legal assistance in criminal matters[44] that a prosecutor of Seoul Central District Prosecutor's Office sent to the Minister of Justice on April 1, 2015, the matters requested by Article 4 of the Mutual Assistance Treaty and Article 12 Paragraph 1 of the Mutual Assistance Act are written, such as the agency requesting mutual assistance, the suspect and the facts of crime (habitual gambling is entered as Section D), and details of and the needs for the request for mutual assistance (provision of investigation material[45] by the U.S. Prosecutor's Office and the Tax offices in relation to the criminal facts of this case).

---

[43]  Article 3 of the Mutual Assistance Act provides that if there is any other provision in the Mutual Assistance Treaty that is different from this law, then that provision shall be followed.
[44]  Page13 through 20 from the Prosecution's opinion (4) dated March 6, 2016.
[45]  <Materials requested with priority> are "especially (1) materials related to money laundering and casino gambling of Sae Joo Chang and Jong-won Kim up to 2014 (gambling money laundering, gambling date, time and location, betting and cash out details, pictures related to gambling such as CCTV, suspicious dealing details of U.S. currency used at the casino of three countries including Macao), (2) Information and material that U.S. prosecution and IRS shared with Korean NTS".



 

③ A request written in English for mutual legal assistance in criminal matters made to the U.S. Department of Justice in the name of the Minister of Justice presented at the court on the 5th trial date of this court is found to be a literal translation of the above request for mutual legal assistance in criminal matters into English, and it is confirmed that the agency requesting mutual assistance, suspect (Sae Joo Chang) and the crime (D. Habitual Gambling) are written. The above request for mutual legal assistance in criminal matters seems to have been sent to the U.S. Department of Justice through the procedure provided by the Mutual Assistance Treaty around April 2015.

④ The central agency of the requested country shall immediately implement the request, or when proper, forward it to the agency with the jurisdiction over the implementation, and the authorized agency of the requested country shall take all the measures within the scope of authority in order to implement the request (Article 5 Paragraph 1 of the Mutual Assistance Treaty), and it seems that the U.S. Department of Justice sent the request for mutual legal assistance in criminal matters to the U.S. Attorney's Office of the California Central District that has jurisdiction over the applicable region, and the above federal prosecution sent it consecutively to IRS.

⑤ IRS had already summoned[46] the material such as various transactions and player rank activities at the casino regarding the defendant, etc. from Bellagio Hotel and Wynn Hotel in Las Vegas, U.S. and had received the relevant materials from each of the above hotels in the forms of paper documents or CD.[47]   Each of the above evidences is judged to be the evidences collected lawfully pursuant to the relevant regulations in the U.S.[48]

---

[46]  IRS request to submit material to Bellagio Hotel was made on 4.28.2011 (Exhibit 1323-4, Evidence record No.40 p.71), and IRS request to submit material to Wynn Hotel was made on 4.29.2011 (Exhibit 1323-6, Evidence record No.40 p.226).

[47]  Bellagio Hotel submitted the relevant material to IRS on 5.17.2011, 9.23.2011 (Exhibit 1323-4, 5, Evidence record No.40 Vol.70, p.198), and Wynn Hotel submitted the relevant material to IRS on 6.7.2011 (Exhibit 1323-8, Evidence record No.40 Vol.284).

[48]  The defendant argues that IRS did not notify the fact of submitting the above material after the fact, and the investigation of the defendant and DKI by the U.S. government was open in violation of the attorney-client privilege and the principle of protection of work product, and therefore the above materials constitute the unlawfully collected evidences under the U.S. law, but first of all it is not clear whether the above is correct, and even if the above allegation is true, it is difficult to see that the evidence collected is not admissible just because of the negligence in the notice procedure or that the violation of the above privilege in opening investigation has effect on the admissibility of the evidences collected afterwards, so the above arguments are not accepted.






⑥ Article 9 Paragraph 2 of the Mutual Assistance Treaty provides that "The requested country may provide copies of documents, record or information held by the government agencies or departments but not disclosed to the public within the scope and terms used by its law enforcement agencies or judicial agencies. The requested country at its own discretion may deny all or part of the request under this Paragraph," and the U.S. Department of Justice and federal prosecution, and IRS decided to provide the material requested by the Ministry of Justice of the Republic of Korea according to the above standard,[49] and it seems that IRS scanned the paper documents among the above material of ⑤ it already had, and converted the electronic document in the above files and CD, etc. into PDF image file, saved in DVD, and sent to the U.S. attorney general in the central district of California, U.S. on October 22, 2015.

⑦ It seems that the District Attorney of the central district of California, U.S. sent 8 copies of DVD received from IRS to the U.S. Department of Justice around October 22, 2015.[50] A prosecutor of the Ministry of Justice of the Republic of Korea received the above 9 copies of DVD by hand-delivery on November 9, 2015 while he visited the U.S. Department of Justice accompanying the Minister of Justice,[51] and the investor of Seoul Central District Attorney's Office seems to have received the above 8 copies of DVD from the above District Attorney at Incheon International airport.[52]

⑧ The District Attorney from Seoul Central District Attorney's Office asked a digital forensic

---

[49] Therefore, the argument of the defendant that it is against the compliance of lawful procedure principle that the U.S. Attorney is provided through an unknown procedure with the material that IRS received from each hotel by asking them to submit those for the purpose of taxation lien or tax collection and use them for the purpose other than the original purpose of collecting them is not accepted.

[50] Evidence Record Vol.40 p.60, p.62 (Exhibit 1323-2, 3), Prosecutor's opinion dated 3.31.2016(6) p.14, it seems that DVD 8 copies were sent and 2 copies were sent later on unlike the description in the reply.

[51] Evidence Record Vol.40, p.60 (Exhibit 1323-2)
Article 3 of the Act on International Judicial Mutual Assistance in Criminal Matters provides that the Mutual Assistance Treaty supersedes the Mutual Assistance Act, and Article 2 of the Mutual Assistance Treaty provides that each party to the treaty shall designate the central agency to send and receive the request for mutual assistance pursuant to the treaty, and that both central agencies shall contact directly or through diplomatic channels, and the above provision is related to the agency that sends and receives the request for mutual assistance and cannot be considered as applying to the case of receiving the material of mutual assistance as a result of judicial mutual assistance as in this case, and it is judged that the fact that a prosecutor under the Ministry of Justice personally received the mutual assistance material is not a defect as to deny the lawfulness of the judicial mutual assistance in criminal matters.

[52] Evidence Record Vol.40 p.59 (Exhibit 1323-1)



 

investigator to output the evidences related to gambling from a part of the above 8 copies of DVD and submitted to this court as evidence.[53]

### (2) Judgment on the admissibility of the evidences related to gambling

### (A) Integrity and consistency in evidence

When electronic information is received from the suspect, etc. through the search and seizure procedure, the integrity and consistency of the electronic information should be proven, that it is not changed from the time of seizure up to the submission into evidence at the court, due to the invisibility and vulnerability of electronic information.

However, unlike this, it is probable to consider that the integrity and consistency of the applicable evidence with the original copy has been proven when it was proven that a third party submitted the material or electronic information kept in the course of business at the request of an authority, the applicable agency kept it in the saving media while fixating the contents and changing only the form or method of recording the information, there is no possibility of contents manipulation or change in the change procedure, and afterwards delivered to the District Attorney through each agency pursuant to the mutual legal assistance in criminal matters and there is no possibility of change until output as evidence, and liberal proof is sufficient as to the degree of proof.

Forensic investigator Sun-woo Lee who received the above DVD and printed each of the above evidences testified at this court that, "DVD was sealed and a security program was installed, so I was able to access the material only after inputting the password, and the applicable password was delivered through a separate path from DVD, and the relevant materials were scanned and turned into image files and stored in the Read Only state in PDF, so it was impossible to amend or change the contents during the process of output, and the date and time of last modification of the file was around

---

[53] The U.S. Department of Justice additionally sent the omitted 2 DVD to the Republic of Korea Ministry of Justice on 11.30.2015, and the Ministry of Justice additionally sent it to Seoul Central District Attorney's Office on 12.10.2015, and the above 2 copies of DVD seem to be irrelevant to this case.



 

October 21, 2015, and the evidences related to the charges of this part from a part of the DVDs[54] received, and the documents were the same as the evidences that the District Attorney submitted to this court, and therefore the above testimony is reliable in the light of the forms and contents of each of the above evidences.

When synthesizing the details and forms of the gambling related evidences and the above testimony of Sun-woo Lee, Bellagio Hotel submitted most material and Wynn Hotel submitted partial materials in the form of paper documents along with each reply to IRS, and the above paper documents seemed to have been turned into electronic documents by scanning, and the material that Wynn Hotel saved in CD and submitted seems to have been submitted in the image file form or was converted to an image file at this stage and saved in each PDF image file form.

Therefore, it is found that each of the above evidences were collected by the procedure provided by the Mutual Assistance Treaty and Mutual Assistance Act with their contents not changed or modified while only the form of recording of the information was changed from the material submitted by Wynn Hotel and Bellagio Hotel, and there was no room for change or modification also in the output procedure, so we can say that the integrity and sameness with the material initially submitted by Wynn Hotel and Bellagio Hotel.

#### (B) Judgment on the admissibility of the gambling related evidences

The gambling related evidences are the evidences that prove the charges and the hearsay principle applies and we will review whether they are admissible by their nature pursuant to Article 315 of the Criminal Procedure Act.

In specifically judging whether a document constitutes the document in the general course of business provided by Article 315 Paragraph 2 of the Criminal Procedure Act, ① whether the applicable document originated from the work activities carried out regularly and routinely, ② whether it was mandatory to prepare the applicable document under the general practice of

---

[54] Sun-woo Lee stated in the witness examination that the number of DVD that he received were 9 copies, but later on corrected it to 8 copies toward the end.





business or work, ③ whether the information in the applicable document was made immediately upon or after acquiring the information and its accuracy can be guaranteed, ④ whether it can be deemed that there is almost no room for the recorder's subjective intervention in the recording procedure because the recording of the applicable document is performed relatively mechanically, and ⑤ whether the applicable document is assured of reliability as there is an opportunity to verify and check the accuracy of the contents afterwards because it has the nature of public announcement, etc., should be comprehensively considered referring to the legislative intention of Article 315 Paragraphs 2 and 3 of the Criminal Procedure Act (See the unanimous decision of Supreme Court on 7.16.2015 Sentence 2015Do2625).

In the light of the contents, forms, and the purpose in preparation induced therefrom of the gambling-related evidences (each document of Exhibit 1323-4, 5, 8, 9, 10; however, excluded among them are Wynn Hotel and Bellagio Hotel's replies to IRS, and IRS Summons to each of the above hotels), it is probable to consider that the employees of each hotel casino have the work duties to input accurate information on time for management of customers and business place, and it is inferred that they input the customer related information (date and time of gambling, duration of gambling, betting amount, extraordinary behaviors, payment of exclusive airplane fare, cash out, and other sales, etc.) into the casino sales management program daily, continuously and mechanically whenever a customer uses the casino and managed the mileage, etc., and kept records such as copying the deposited checks, passports and visas. Especially in the kind of business such as casino sales where it is important to manage the VIP customers who make a large amount of sales and necessary to immediately respond to irregular behaviors of the customer, it seems that the recording should be made immediately upon or after acquiring the information, and there is almost no room for the subjective intervention of the recording in the recording process, so in the light of the nature of the document or record, high reliability is found and it is judged that there is no need for cross-examination or even if the preparer is summoned, it has no significance other than submitting documents, so their admissibility is found by their nature pursuant to Article 315 Paragraph 2 through 3 of the Criminal Procedure Act.

 

On the other hand, the electronic data screen on p.399 of Vol.40, No. 75 of the evidence records among the gambling-related evidences, it seems that the defendant's visit dates, gambling time, and average betting amount per game are indicated based on the above input information pursuant to the designated conditions from the sales management program where the casino employees entered information at each time through the above process, and the above electronic data screen was drawn from the ordinary documents prepared in the course of business and the document prepared by other especially reliable circumstances, which also constitute the ordinary document in the course of business under Article 315 Paragraph 2 or the document of Paragraph 3, and we can say that they are evidences whose admissibility is, of course, found.

### B) Whether the habitual nature of gambling of the defendant is found

(1) Mark of habitual nature

'Habitual nature' in the habitual gambling crime refers to the habit of repeatedly gambling which is the nature of the actor, and in judging whether such a habit exists or not, priors of gambling or the number of gambling constitute important material for judgment, but even when a person may not have a gambling prior, it is fine to find habitual nature when the habit of gambling is found considering various circumstances such as the nature and method of gambling, the size of betting amount and how the person came to participate in the gambling. (See Supreme Court 7.11.1995. Sentence 95Do955 Decision, etc.)

(2) Concrete judgment

The defendant does not have the prior of being punished due to gambling,[55] but: ① as

---

[55]  The defendant was prosecuted on 9.26.1990 as written in the beginning of the charges on this part on the charges of habitual gambling and violation of the Foreign Exchange Control Act, but was sentenced the decision to dismiss the prosecution because the statute of limitation expired on the charge of habitual gambling, and was found guilty on the count on the violation of the Foreign Exchange Control Act in that he was a party of the incurrence of foreign currency debt among residents such as borrowing 1-million Hong Kong dollar from Suk-kwon Lee while doing baccarat gambling in Macao on 8.4.89 and losing all the money, and was sentenced to 2 years in prison, and in the appeal trial was sentenced to 1 year in prison and 2 years in probation and the decision was confirmed, so he has no prior of gambling, and although the debt burden resulting from gambling is pointed out as a cause of incurring foreign currency bond among residents in the facts of violation of the Foreign Exchange Control Act, but this was 11 years before the first gambling date, and it is difficult to use this part as an element to judge the habit of gambling in the charges.



 

found in below Paragraph C), he visited casino once a year and did Baccarat gambling between 2003 and 2013 except in 2011 when he was subject to IRS investigation (deposit was made in advance in 2012 as well, but seems that he wasn't able to visit due to the changes in circumstances); ② Baccarat gambling takes about 1 minute per game, the results are accidental, the gambling results can be known immediately, betting amounts are big, so it has a very high gambling nature; ③ Gambling time of the defendant found in below Paragraph C), average betting amount per game [Minimum $5,000 (acknowledged by the defendant himself) to the maximum of about $22,000], the defendant's deposit amount and cash out amount, the amount of the money the defendant made and lost by gambling[56]; ④ Size of the entire gambling that can be induced from the above Paragraph ③; ⑤ The defendant was the target of surveillance due to high amount of betting at Bellagio Hotel around 2005 and is a platinum class customer granted to VVIP customer at Wynn Hotel casino; ⑥ the defendant withdrew checks not only from his own account but also from DKI external account 6 times from around August 2006 to September 7, 2010 and used for deposit, then there is no way other than considering him as having the habit of gambling.

    (3) Judgment on the defendant's allegation

    The defendant argues that he has no habit of gambling and he just dropped by at a casino and played Baccarat for a while when he went on a business trip to the U.S. to participate in the event held abroad or to visit branches or to entertain a customer.

    However, it seems that the events listed by the defendant have never been held in Las Vegas, and it takes 1 hour by airplane to go to Las Vegas from LA, so it is hard to accept that he would even make deposit before visiting a casino and then visit casino unless he has a habit of gambling.

---

[56] Evidence Record Vol.9 pp.6600-6608; Suspect Interrogation Report against the Defendant, Detailed description is omitted.



 

Jong-won Kim stated at the prosecutors' office that 'he accompanied the defendant when he visited Wynn Hotel casino from around 2006 to around 2013'[57] which is consistent with the details of departure and arrival record, etc.[58] of the defendant and Jong-won Kim. The defendant came to LA with Jong-won Kim on October 1, 2013, went to Brazil and came back, and after that he went to Las Vegas with Jong-won Kim on an exclusive airplane sent by the Wynn Hotel casino, but it seems that he never met and entertained Brazilian people in relation to Brazil steel manufacturing business in the U.S.,[59] and it seems there was very low possibility that Brazilian people visited LA as it takes 12 hours from Brazil to LA by airplane, and the atmosphere in Brazil is to welcome the steel manufacturing business so it seems there was no need for the defendant, who is the Chairman of Dongkuk Steel Manufacturing Group, to entertain them in Las Vegas without even an entourage.

### C) Whether individual gambling cases are found

   (1) 2001 and 2002 Bellagio Hotel casino gambling

   It is difficult to find that the charges on this part are found beyond a reasonable doubt only with the evidences submitted by the prosecutor (details of arrival and departure of the defendant, copy of the visa of the defendant, details of deposits which are illegible because the deleting line is drawn through the materials before 2003).

   (2) Bellagio Hotel casino gambling from 2003 to 2005

   According to the details of arrival and departure of the defendant and the evidences lawfully admitted and investigated by this court (Evidence record Vol.40 No.75, p.151, pp.161 through 164, pp.205 through 208, p.211, p.212), the charges on this part are sufficiently found.

---

[57]   The 7th suspect interrogation report on Jong-won Kim

[58]   Jong-won Kim stated in the original trial that the defendant went with Brazilian customers in 2013 and he himself went with other friends, but according to the reply to the inquiry of facts with Korean Airlines, the defendant and Jong-won Kim used the same airplane when arriving at Los Angeles from Incheon on 10.1.2013 and arriving at Incheon from Los Angeles on 10.14. and even according to the statement by Hyun-hui Lee, Jong-won Kim is found to be the person who went to Las Vegas on a private airplane provided by Wynn Hotel casino together with the defendant when the defendant came back from the business trip to Brazil, and it is not likely that there was another companion such as the Brazilian persons related to his business.

[59]   Arrival and departure records of the defendant and Jong-won Kim, results of the reply to the inquiry of facts to Korean Airlines, statement of Jong-won Kim and Hyun-hui Lee at the Prosecutors' Office






(3) Wynn Hotel casino gambling from 2006 to 2013

According to the defendant's statement at the prosecutor's office, details of the arrival and departure of the defendant and the evidences lawfully admitted and investigated by this court (Evidence record Vol.40 pp.327 through 331, 380 through 381, and 399 through 401), the charges on this part are sufficiently found. (However, when the time is recorded overlapping on the electronic screen, the time excluding the overlapping time is considered the gambling time)

In the light of the details where the defendant gambled at many tables (Evidence record Vol.40 pp.400 through 401), the defendant argues that the details of other people including those who accompanied the defendant were accounted to the defendant, and therefore not all the gambling hours above may be considered as the defendant's gambling time, and ultimately the above evidence is not reliable.   However, according to the evidences related to gambling, it seems there were many tables in the gambling place, and due to the nature of Baccarat which takes 1 minute per game, there is a big possibility that the defendant moved around many tables to gamble, it is unlikely that the gambling details of others would be added to the defendant managed as VIP, the defendant usually visited casino with Jong-won Kim[60], and it seems that Jong-won Kim played Roulette or slot machine and mini Baccarat, and there does not seem to be anyone who would visit the casino with the defendant and play Baccarat on the defendant's account, as reviewed before, it is unlikely that the defendant entertained the persons related to Brazil business in Las Vegas without anyone accompanying him, then the admissibility of above evidences should not be excluded just because the gambling time is overlapping.

**E. Point on the violation of Special Economy Act (Breach of trust) regarding the victim Dongkuk Steel Manufacturing related to Mill Scale (Not guilty in the original trial)**

---

[60]  Jong-won Kim's statement at the Prosecutor's Office, Evidence Record Vol.23, p.2584.





## 2. Defendant Sae Joo Chang

### B. Habitual gambling

#### 1) 2003 Bellagio Hotel casino Baccarat gambling

(A) The defendant deposited a check of $500,000 withdrawn from Mizuho Corp Bank of California account in California, U.S. into the Bellagio Hotel casino on June 16, 2003, and exchanged the deposit fund with Baccarat gambling chips and played Baccarat gambling from around that time up to June 19, 2003 by betting the average of $15,198 per game which is about KRW 17.4-million[85].

(B) The defendant moved to Las Vegas via an airplane exclusively for VIP provided by Bellagio Hotel casino on October 9, 2003 and deposited a check of $500,000 withdrawn from the defendant's above Mizuho Corp Bank of California account in California, U.S. into the Bellagio Hotel casino on June 16, 2003, and exchanged the deposit fund, etc. with Baccarat gambling chips and played Baccarat gambling from around that time up to June 19, 2003 by betting the average of $15,198 per game which is about KRW 17.4-million.

As such, the defendant was involved in Baccarat gambling by betting the average of $15,198 per game, which is about KRW 17.4-million at the above Bellagio Hotel Casino two times, once from June 16 to 19, 2003 and once from October 9 to 12, 2003 for the total of 13 hours and 6 minutes.

---

[85]  $15,198 x minimum standard exchange rate among the gambling days, hereafter, Korean Won conversion of the average betting amount per game is calculated with the same standard.



 

### 2) 2004 Bellagio Hotel casino Baccarat gambling

The defendant went to Las Vegas on a VIP exclusive airplane provided by the above Bellagio Hotel on February 4, 2004, deposited a check of about $500,000 withdrawn from the defendant's above Mizuho Corp Bank of California account into the Bellagio Hotel casino on February 4, 2004, and exchanged the deposit fund, etc. with Baccarat gambling chips and played Baccarat gambling from around that time up to February 6, 2004 for the total of 8 hours and 11 minutes by betting the average of $13,702 per game which is about KRW 15.9-million.

### 3) 2005 Bellagio Hotel casino Baccarat gambling

The defendant went to Las Vegas on a VIP exclusive airplane provided by the above Bellagio Hotel on January 28, 2005, deposited a check of about $1,000,000 withdrawn from the defendant's above Mizuho Corp Bank of California account with the Bellagio Hotel casino, and exchanged the deposit fund, etc. with Baccarat gambling chips and played Baccarat gambling from around that time up to February 2, 2005 for the total of 13 hours and 15 minutes by betting the average of $20,132 per game which is about KRW 20.6-million.

### 4) 2006 Wynn Hotel casino Baccarat gambling

The defendant deposited a check of about $500,000 withdrawn from the DKI's non-ledger account at Wilshire State Bank (No. 8307105) on August 11, 2006 with Wynn Hotel in Las Vegas, Nevada, U.S., and exchanged the deposit fund, etc. with Baccarat gambling chips and played Baccarat gambling from around that time up to August 13, 2006 for the total of 11 hours and 45 minutes by betting the average of $11,022 per game which is about KRW 10.5-million.

### 5) 2007 Wynn Hotel casino Baccarat gambling

A) The defendant deposited a check of about $300,000 withdrawn from the DKI's non-ledger






account at Wilshire State Bank (No. 8307105) and $500,000 withdrawn from the defendant's Wilshire State Bank account (No. 8111049) for the total of $800,000 on February 17, 2007 at Wynn Hotel casino in Las Vegas, Nevada, U.S., and exchanged the deposit fund, etc. with Baccarat gambling chips and played Baccarat gambling from around that time up to February 20, 2007 for about 6 hours[86] by betting the average of $16,302 per game which is about KRW 15.2-million.

B) The defendant deposited a check of $200,000 withdrawn from the above DKI's non-ledger account at Wilshire State Bank and $800,000 withdrawn from the defendant's above Wilshire State Bank account for the total of $1,000,000 on September 29, 2007 at above Wynn Hotel casino, and exchanged the deposit fund, etc. with Baccarat gambling chips and played Baccarat gambling from around that time up to October 2, 2007 for about 6 hours and 45 minutes by betting the average of $17,000 per game which is about KRW 15.5-million.

### 6) 2008 Wynn Hotel casino Baccarat gambling

The defendant deposited a check of $1,000,000 withdrawn from the defendant's above Wilshire State Bank account at the above Wynn Hotel casino on June 18, 2008, and exchanged the deposit fund, etc. with Baccarat gambling chips and played Baccarat gambling from around that time up to June 21, 2008, for about 25 hours[87] betting the average of $22,348 per game which is about KRW 22.8-million.

### 7) 2009 Wynn Hotel casino Baccarat gambling

A) The defendant deposited a check of about $500,000 withdrawn from the DKI's non-ledger account at Wilshire State Bank and $500,000 withdrawn from the defendant's above Wilshire State Bank account for the total of $1,000,000 on April 20, 2009 at the above Wynn Hotel casino, and exchanged the deposit fund, etc. with Baccarat gambling chips and played Baccarat gambling from around that time up to April 22, 2009 for about 12 hours and 1 minute by betting the average of

---

[86] The gambling time indicated in the charges is 7 hours and 2 minutes, but it was re-calculated by deducting the overlapping times calculated from a plurality of tables. The same applies in the below Paragraphs 6), 7) B), and 8).

[87] The gambling time indicated in the charges is 30 hours and 21 minutes






$18,506 per game which is about KRW 24.5-million.

B) The defendant deposited a check of $300,000 withdrawn from the DKI's non-ledger account at Wilshire State Bank and $700,000 withdrawn from the defendant's above Wilshire State Bank account for the total of $1,000,000 on October 25, 2009 at the above Wynn Hotel casino, and exchanged the deposit fund, etc. with Baccarat gambling chips and played Baccarat gambling from around that time up to October 29, 2009 for about 21 hours[88] betting the average of $15,737 per game which is about KRW 18.6-million.

### 8) 2010 Wynn Hotel casino Baccarat gambling

The defendant deposited a check of $500,000 withdrawn from the above DKI's non-ledger account at Wilshire State Bank and $500,000 withdrawn from the defendant's above Wilshire State Bank account for the total of $1,000,000 at the above Wynn Hotel casino on September 8, 2010, and exchanged the deposit fund, etc. with Baccarat gambling chips and played Baccarat gambling from around that time up to September 11, 2010 for about 24 hours[89] betting the average of $20,361 per game which is about KRW 23.8-million.

### 9) 2013 Wynn Hotel casino Baccarat gambling

The defendant transferred $200,000 to the account of Rambas Club (Rambas Marketing LL.C.[sic]) that manages Las Vegas Wynn Hotel casino VIP customers from the above Wilshire State Bank account of the defendant on October 5, 2012.

The defendant instructed Hyun-hui Lee, an employee of DKI who manages the U.S. HSBC account of the defendant (No.269-03372-6) and withdrew $1,000,000 in 2 checks of $500,000 each, and reserved a VIP game room by sending a fax of the copy of the above check as material regarding the gambling fund to use the VIP game room to 'Charlie Kim' who is in charge of Asian VIP

---

[88] The gambling time indicated in the Complaint is 25 hours 49 minutes
[89] The gambling time indicated in the Complaint is 25 hours 28 minutes



 

customers including Korea at the above Rambas Club, went from Los Angeles to Las Vegas by using private airplane provided to VIP customers of Wynn Hotel casino, personally carrying the above check, and deposited the above $1,000,000 and the $200,000 Rambas Club account transfer fund dated October 5, 2012 for the total of $1,200,000 and exchanged the deposit fund, etc. with Baccarat gambling chips and engaged in Baccarat gambling.

As such, the defendant habitually engaged in Baccarat gambling at Bellagio Hotel casino and Wynn Hotel casino in Las Vegas, U.S.A. for the total of 12 times from 2003 to 2013.

---

[90] $292,065 x exchange rate at that time.



# CERTIFICATION OF TRANSLATION

# and

# DECLARATION

State of California          )
                            )       S. S.
Los Angeles County          )


I, Soomi Ko, the undersigned, declare under penalty of perjury that I am a duly certified Korean Court Interpreter approved by the United States District Courts, certified by the State of California and the Los Angeles County Superior Courts, with competent knowledge of Korean and English, and that I have truthfully and correctly translated the foregoing **19** pages of **Selection from Judgment of Case No. 2015No3304, pgs. 1, 62-74, and 101- 105** from Korean to English in accordance with Fed. R. Evid. 901 and that the said translation is, to the best of my knowledge and belief, a true and correct translation. I further declare under penalty of perjury that I am neither counsel for, related to, nor employed by any of the parties, and that I have no financial or other interest in the outcome of any action related to this translation. I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 3, 2016

Soomi Ko
California State Certified Court Interpreter
#300732
Direct: (213) 999-7848
soomi@komartin.com
www.komartin.com


Ko & Martin Certified Interpreters and Translators
Specializing in Korean and Chinese Languages



www.scourt.go.kr


# 서 울 고 등 법 원

## 제 1 형 사 부

## 판 · 결

| | | |
|---|---|---|
| 사 건 | 2015노3304 | 가. 특정경제범죄가중처벌등에관한법률위반(횡령) |

[피고인 장세주에 대하여 일부 인정된 죄명 : 업무
상횡령, 피고인 김종원에 대하여 일부 인정된 죄
명: 특정경제범죄가중처벌등에관한법률위반(횡령)
방조]

나. 특정경제범죄가중처벌등에관한법률위반(배임, 일
부 인정된 죄명 업무상배임)

다. 특정경제범죄가중처벌등에관한법률위반(재산국외
도피)

라. 범죄수익은닉의규제및처벌등에관한법률위반

마. 배임수재

바. 상습도박

사. 외국환거래법위반

아. 업무상횡령

| | |
|---|---|
| 피 고 인 | 1. 가~사. 장세주 (531108-0000000), 동국제강그룹 회장 |

주거   서울 종로구 율곡로3길 74-11 (화동)

등록기준지   부산 동구 초량동 207




라. 피고인 장세주의 상습도박의 점(원심 무죄, 면소, 공소기각 부분) [공소사실 2의 다.항]

1) 원심의 판단

원심은 피고인에 대하여 도박의 상습성을 인정할 증거가 부족하다는 이유로 상습도박의 점을 무죄로 판단하고, 개별적인 도박의 점 중 범죄일람표(6)[37] 순번 13, 14번 기재 공소사실만 단순도박죄로 인정하고,[38] 순번 1 내지 6번 기재 공소사실에 대하여는 공소사실이 특정되지 아니하여 공소제기의 절차가 법률의 규정에 위반하여 무효라고 보아 공소기각의 판결을, 순번 7 내지 12번 기재 공소사실에 대하여는 공소시효가 완성되었다는 이유로 면소 판결을 선고하였다.

2) 당심에서의 공소장변경

검사는 당심에 이르러 원심에서 유죄로 판단된 부분을 포함하여 이 부분 죄명을 '상습도박'으로 유지하면서 공소사실을 별지1 공소사실 제2의 다.항 기재와 같이 교환적으로 변경하는 공소장변경 허가신청을 하여 이 법원이 이를 허가함에 따라 심판대상이 변경되었으므로 원심판결은 더 이상 유지될 수 없게 되었다.

위와 같은 직권파기사유가 있음에도 검사의 사실오인 및 법리오해 주장은 여전히 이 법원의 판단대상이 되므로, 이에 관하여 살펴본다.

3) 당심의 판단

가) 검사가 당심에서 제출한 형사사법공조자료의 증거능력 판단

검사는 원심판결 변론종결 직전 형사사법공조절차에 따라 미국 국세청(이하 'IRS'[39]라 한다)이 벨라지오호텔 및 윈호텔로부터 제출받아 보관하고 있던 피고인에 대

---

37) 원심 판시 범죄일람표(6)을 말한다.
38) 피고인은 위 유죄 부분에 대하여 사실오인 및 법리오해 주장 항소를 한 바 없다.





한 도박 관련 자료들을 미국 법무부를 통하여 제공받았으나, 재판일정상 이를 증거로 제출하지 못하다가, 당심에 이르러 형사사법공조요청 절차에 관한 문서(증거목록 1323 번의 1 내지 3, 이하 '절차 관련 증거'라 한다) 및 형사사법공조절차에 따라 미국 법무 부로부터 제공받은 서류 및 기록(증거목록 1323번의 4 내지 10, 이하 '도박 관련 증거' 라 한다)을 제출하였고, 피고인은 이를 증거로 함에 부동의하였다.

위 각 증거들 중 도박 관련 증거(아래에서 보는 IRS의 Summons와 그 첨부문 서, 위 각 호텔의 IRS에 대한 회신문은 제외한다)만이 공소사실을 입증하는 증거이고, 절차 관련 증거는 도박 관련 증거 수집절차의 적법성을 뒷받침하는 증거라 할 것인바, 요증사실인 공소사실을 입증하는 도박 관련 증거는 ① 형사소송법 제308조의2가 적용 되므로 그 증거수집의 절차(형사사법공조절차를 포함한다)가 적법하여야 하고, ② 적법 한 절차에 의하여 수집된 것으로 인정되는 경우에도 형사소송법이 정하는 바에 따라 증거능력이 인정되어야 한다.

(1) 형사사법공조절차를 포함한 증거수집절차의 적법성 판단

(가) 형사사법공조절차를 통한 증거수집절차의 적법성 판단을 위하여, 공조절차 의 모든 단계가 낱낱이 드러나야 하는 것은 아니며, 전체적으로 보아 형사사법공조요 청이 대한민국과 미합중국간의 형사사법공조조약(이하 '공조조약'이라 한다)과 국제형 사사법 공조법(이하 '공조법'이라 한다)에 기하여 적법하게 이루어지고, 그에 따라 피요 청국의 중앙기관이 해당 서류, 기록 등을 확보하여 피요청국에 적법하게 회신한 것으 로 인정될 수 있으면 족하다.

(나) 형사소송법 제308조의2에서의 증거수집에 있어서의 '적법한 절차'는 증거

---

39) Internal Revenue Service의 약자





능력의 요건에 해당하므로 검사가 그 존재에 대하여 구체적으로 주장·증명하여야 하지만, 이는 '소송상의 사실'에 관한 것이므로 엄격한 증명을 요하지 아니하고 자유로운 증명으로 족하다고 할 것이다.[40) 또한 증거수집절차의 적법성은 반드시 증거능력이 있는 다른 증거에 의하여 뒷받침되어야 할 것이 아니고 다른 증거와 함께 기록에 드러난 모든 사정을 종합하여 판단할 수 있다고 봄이 상당하다.

(다) 절차 관련 증거들[41)은 그 형식과 내용에 비추어 우리 법무부와 미국 연방검찰, 법무부의 각 담당자가 공조법 및 공조조약에 따라 형사사법공조요청을 받은 사항을 이행하기 위하여 작성한 공문서[42)로서 진정한 것으로 판단되고, 형사소송법 제315조 제3호의 기타 특히 신용할 만한 정황에 의하여 작성된 문서로서 당연히 증거능력이 있다고 봄이 타당하다(설령 위 조항에 따라 증거능력이 부여되지 않는다 하더라도 위 증거들은 공소사실과의 관계에서 전문증거에 해당하지 아니하므로 전문법칙이 적용될 여지가 없고, 소송상의 사실인 증거수집절차의 적법성을 뒷받침하는 자료는 될 수 있다고 볼 것이다).

한편, 증거목록 1323-5, 6, 7, 8 중 IRS의 벨라지오호텔 및 윈호텔에 대한 정식 자료제출 요구(Summons) 및 그 첨부문서는 IRS가 그 업무처리를 위하여 미국 관계 법

---

40) 대법원 2012. 7. 26. 선고 2012도2937 판결은, 형사소송법 제312조 제4항에서 '특히 신빙할 수 있는 상태'란 진술 내용이나 조서 작성에 허위개입의 여지가 거의 없고, 진술 내용의 신빙성이나 임의성을 담보할 구체적이고 외부적인 정황이 있는 것을 말한다. 그리고 이러한 '특히 신빙할 수 있는 상태'는 증거능력의 요건에 해당하므로 검사가 그 존재에 대하여 구체적으로 주장·증명하여야 하지만, 이는 소송상의 사실에 관한 것이므로 엄격한 증명을 요하지 아니하고 자유로운 증명으로 족하다고 판시하고 있다.
형사소송법 제308조의2에서의 '적법한 절차' 역시 요증사실인 공소사실이 아니라 소송상의 사실에 관한 것이므로, 같은 법리가 적용된다고 할 것이다.
41) 위 각 증거들은 요증사실인 공소사실의 진실성을 입증하는 것이 아니므로 전문증거에 해당하지도 아니할 뿐 아니라, 형사소송법 제315조 제3호에서 규정한 '기타 특히 신용할 만한 정황에 의하여 작성된 문서'는 형사소송법 제315조 제1호와 제2호에서 열거된 공권적 증명문서 및 업무상 통상문서에 준하여 '굳이 반대신문의 기회 부여 여부가 문제 되지 않을 정도로 고도의 신용성의 정황적 보장이 있는 문서'를 의미하는바, 한국과 미국의 해당 기관이 공조조약에 따라 작성한 공문서로서 반대신문의 기회 부여가 필요하지 않다고 할 것이다.
42) 미국 연방검찰 및 미국 법무부 담당자의 회신(증거목록 1323-2, 3) 내용에 따르면 위 문서는 DVD에 저장되어 있었던 문서로 보이지 아니하며, 그 기재내용과 같이 이메일 또는 인편으로 전달된 것으로 보인다.




령에 따라 위 각 호텔에 대하여 피고인 등에 대한 정보 제출을 요구한 문서이고, 위 각 호텔이 IRS에 보낸 회신문은, 허위정보 제공시 제재를 받게 되는 위 각 호텔들이 IRS의 요구에 따라 관련 자료를 송부하면서 보낸 문서로서, 위 각 문서는 그 작성경위 및 내용과 형식에 비추어 형사소송법 제315조 제3호의 기타 특히 신용할 만한 정황에 의하여 작성된 문서로서 당연히 증거능력이 있다고 봄이 타당하다(그렇지 않다 하더라도 위 증거는 공소사실을 입증하는 증거가 아니고 증거수집절차의 적법성을 판단하는 자료로 삼을 수 있다).

(라) 위와 같은 기준에 따라 당심이 적법하게 채택하여 조사한 증거들(또는 증거능력이 부여되지 않더라도 증거수집절차의 적법성을 뒷받침할 수 있는 자료들)과 그 밖에 기록을 종합하여 인정되는 아래와 같은 사정에 의하면, 형사사법공조절차를 포함하여 도박 관련 증거의 수집절차는 적법하다고 인정되고, 그와 같은 절차에 따라 수집된 증거들은 적법하게 수집된 증거로 봄이 상당하다.

① 공조조약 제1조 제2항은 공조의 범위에 '서류, 기록 및 증거물의 제공'을 포함하도록 정하고 있고, 공조법 제5조 제2호는 공조의 범위에 서류·기록의 제공을 포함시키고 있다.[43]

② 서울중앙지방검찰청 검사가 2015. 4. 1. 법무부장관에 송부한 형사사법공조요청서[44]에는, 공조요청기관, 피의자 및 범죄사실(상습도박 범죄사실은 D.항으로 기재되어 있음), 공조요청의 내용(미국 검찰과 세무당국이 본건 범죄사실 등과 관련하여 조사한 자료 제공[45]) 및 필요성 등 공조조약 제4조 및 공조법 제12조 제1항에서 요구하

---

43) 공조법 제3조는 공조에 관하여 공조조약에 이 법과 다른 규정이 있는 경우에는 그 규정에 따른다고 규정하고 있다.
44) 2016. 3. 6.자 검찰 의견서(4) 중 제13 내지 20면
45) <최우선 요청자료>로 "특히 ① 2014년까지 장세주 및 김종원의 자금세탁 및 카지노 도박과 관련된 자료(도박 자금 세탁, 도박 일시 및 장소, 베팅 및 cash out 내역, CCTV 등 도박 관련 사진, 마카오 등 제3국 카지노에서




는 사항들이 기재되어 있다.

③ 당심 제5회 공판기일에 법정에 제시된 법무부장관 명의의 미국 법무부에 대한 영문 공조요청서는 위 형사사법공조요청서를 그대로 영문으로 번역한 것으로 판단되고, 공조요청기관, 피의자(Sae Joo Chang) 및 범죄사실(D. Habitual Gambling)이 기재되어 있음이 확인된다. 위 공조요청서는 2015. 4.경 공조조약이 정한 절차에 따라 미국 법무부에 송부된 것으로 보인다.

④ 피요청국의 중앙기관은 요청을 즉시 집행하거나, 적절한 경우에는 집행의 관할권을 가진 기관에 이를 이첩하여야 하고, 피요청국의 권한있는 기관은 요청을 이행하기 위하여 그 권한범위 안의 모든 조치를 취하여야 하는바(공조조약 제5조 제1항), 미국 법무부는 사법공조 요청사항을 해당지역을 관할하는 캘리포니아 중부지구 연방검찰로, 위 연방검찰은 IRS로 순차 이첩한 것으로 보인다.

⑤ IRS는 2011. 4.경 이미 미국 라스베가스 소재 벨라지오 호텔과 윈호텔에 대하여 피고인 등에 대한 각종 거래 및 카지노에서의 플레이어 등급활동 등 자료의 제출을 요구(Summons)하여[46] 위 각 호텔로부터 2011. 5.경 관련자료를 종이문서 또는 CD의 형태로 제출받은 바 있었다.[47] 위 각 증거들은 IRS가 미국내 관련 규정에 의하여 적법하게 수집한 증거로 판단된다.[48]

___

이용한 미국 통화 의심거래내역 등 포함), ② 미국 검찰 · IRS가 한국 NTS와 공유한 정보 및 자료"가 기재되어 있다.

[46] 벨라지오 호텔에 대한 IRS의 자료제출요구는 2011. 4. 28.에(증거목록 1323-4, 증거기록 제40권 제71면), 윈호텔에 대한 IRS의 자료제출요구는 2011. 4. 29.에 각 이루어졌다(증거목록 1323-6, 증거기록 제40권 제226면).

[47] 벨라지오 호텔은 2011. 5. 17., 2011. 9. 23. IRS에 관련 자료를 제출하였고(증거목록 1323-4, 5, 증거기록 제40권 제70, 198면), 윈호텔은 2011. 6. 7.에 IRS에 관련 자료를 제출하였다(증거목록 1323-8, 증거기록 제40권 제284면).

[48] 피고인은 IRS가 위 자료 제출사실을 사후에 통지하지 아니하였고, 미국 정부의 피고인 및 DKI에 대한 조사가 미국법상 변호사-의뢰인 비밀보장 특권 및 작업물 보호의 원칙에 위반하여 개시되었으므로 위 자료들은 미국법상 위법하게 수집된 증거에 해당한다고 주장하나, 우선 위 사실 여부가 불분명한데다가 설령 위 주장이 사실이라 하더라도 통지절차의 해태만으로 수집된 증거가 증거능력을 상실한다거나 조사 개시에서의 위 특권 위반 등이 이후 수집된 증거의 증거능력에도 영향을 미친다고 보기 어려우므로 위 주장은 받아들이지 아니한다.





⑥ 공조조약 제9조 제2항은 '피요청국은 자국의 법집행기관 또는 사법기관이 이용하는 것과 같은 범위 및 조건 안에서, 정부부처 또는 정부기관이 보유하나 일반에 개방되어 있지 아니한 문서, 기록 또는 정보의 사본을 제공할 수 있다. 피요청국은 그 재량에 따라 이 항에 따른 요청의 전부 또는 일부를 거절할 수 있다.'고 규정하고 있는 바, 미국 법무부 및 연방 검찰, IRS는 위 기준에 따라[49] 대한민국 법무부가 요청한 자료를 제공하기로 하여, IRS는 이미 보유하고 있던 위 ⑤의 자료 중 종이문서는 스캔하여 이미지 파일로 만들고 위 파일과 CD 등에 담긴 전자문서를 PDF 이미지 파일로 변환하여 DVD에 저장하여 2015. 10. 22. 미국 캘리포니아 중부지구 연방검찰에 송부한 것으로 보인다.

⑦ 미국 캘리포니아 중부지구 연방검찰청의 검사는 미국 법무부에 2015. 10. 22.경 IRS로부터 받은 DVD 8장을 송부한 것으로 보인다[50]. 대한민국 법무부 소속 검사가 법무부장관을 수행하여 미국 법무부를 방문한 기회에 2015. 11. 9. 위 DVD 8장을 직접 전달(hand-delivery) 방식으로 전달받았으며[51], 서울중앙지방검찰청 소속 수사관은 인천공항에서 위 검사로부터 위 DVD 8장을 전달받은 것으로 보인다.[52]

⑧ 서울중앙지방검찰청 검사는 디지털포렌식 전문수사관으로 하여금 위 DVD 8

---

49) 따라서, IRS가 조세채무 또는 세금징수 등의 목적으로 제출을 요구하여 위 각 호텔로부터 제출받은 자료를 미국 연방검찰이 불상의 경위로 제공받고 이를 우리 원래의 수집 목적 외의 용도로 사용하는 것은 적법절차원칙 준수에 반한다는 피고인의 주장은 받아들이지 아니한다.

50) 증거기록 제40권 제60면, 제62면(증거목록 순번 1323-2, 3), 2016. 3. 31.자 검찰 의견서(6) 제14면, 회신문의 기재와 달리 DVD 8장을 송부하고 2장은 추후 송부된 것으로 보인다.

51) 증거기록 제40권 제60면(증거목록 순번 1323-2)
국제형사사법 공조법 제3조는 공조조약이 공조법에 우선한다고 규정하고 있고, 공조조약 제2조는 각 체약당사국은 조약에 따라 공조요청서를 발송·접수하는 기관을 지정하여야 한다고 하면서, 양 중앙기관은 직접 접촉하거나 외교경로를 통하여 접촉한다고 규정하고 있는바, 위 규정은 공조요청서를 발송하고 접수하는 기관에 관한 규정이어서 본 사안과 같이 사법공조의 결과물로서의 공조자료를 수령하는 경우에까지 적용된다고 볼 수 없는바, 법무부 소속 검사가 공조자료를 직접 건네받았다는 것이 형사사법공조절차의 적법성을 부인할 정도의 하자는 아니라고 판단된다.

52) 증거기록 제40권 제59면(증거목록 순번 1323-1)




장 중 일부에서 도박 관련 증거들을 출력하게 하여 당심에 증거로 제출하였다.53)

(2) 도박 관련 증거의 증거능력 판단

(가) 증거의 무결성, 동일성

압수수색절차에 의하여 피의자 등으로부터 전자정보를 압수한 때에는 전자정보의 비가시성, 취약성 등으로 인하여 압수 당시부터 공판정에서의 증거 제출시까지 전자정보가 변개되지 아니하고 원본과 동일하다는 점, 즉 무결성과 동일성이 증명되어야 한다.

그러나, 이와 달리 권한있는 기관의 요청에 따라 제3자가 업무상 보관하고 있는 자료나 전자정보를 제출하고, 해당기관이 그 내용을 고정시킨 채 정보의 수록형태나 방법만을 변환하여 저장매체에 수록하였고, 그 변환과정에서 내용 조작이나 변조의 가능성이 없으며, 이후 형사사법공조조약에 따라 각 기관을 거쳐 검사에게 전달되어 증거물로 출력되기까지 변개될 가능성이 없음이 증명된 경우에는 해당 증거의 원본과의 동일성 및 무결성은 증명되었다고 봄이 상당하고, 그 증명의 정도는 자유로운 증명으로 족하다고 할 것이다.

위 DVD를 전달받아 위 각 증거들을 출력한 디지털포렌식 전문수사관인 이선우는 당심 법정에서, 'DVD는 봉인이 되어 있었고 보안프로그램이 설치되어 있었기 때문에 암호를 입력하여야만 자료에 접근할 수 있었고, 해당 암호는 DVD와는 별도의 경로를 통해 전달받았으며, 관련 자료들을 스캔하여 그림파일로 만든 다음 PDF 형태로 읽기기능만 활성화된 상태로 저장되어 있었기 때문에 이를 열람하거나 출력하는 과정에서 그 내용을 수정하거나 변경하는 것이 불가능하였으며, 파일의 마지막 수정일시는

---

53) 미국 법무부는 2015. 11. 30. 한국 법무부에 누락된 2장의 DVD를 추가로 송부하였고, 법무부는 2015. 12. 10. 에 이를 서울중앙지방검찰청에 추가로 송부하였는데, 위 2장의 DVD는 본건과 무관한 것으로 보인다.




2015. 10. 21.경이었고, 인계받은 DVD[54] 중 일부로부터 이 부분 공소사실과 관련된 증거를 문서로 출력하였고, 그 문서들이 검사가 당심에 제출한 증거들과 동일하다고 진술하였는바, 위 진술은 위 각 증거들의 형태와 내용 등에 비추어 신빙성이 있다.

도박 관련 증거들의 내용과 형식, 위 이선우의 진술을 종합하여 보면, 벨라지오 호텔은 대부분의 자료를, 원호텔은 일부 자료를 각 IRS에 대한 회신문과 함께 종이문서의 형태로 제출하였고, 위 종이문서는 스캔하는 방식으로 전자문서화된 것으로 보이고, 원호텔이 CD에 담아 제출한 자료는 처음부터 그림 파일 형태로 제출되었거나 이 단계에서 그림 파일로 변환되어 각 PDF 이미지 파일의 형태로 저장된 것으로 보인다.

따라서, 위 각 증거들은 원호텔, 벨라지오 호텔이 제출한 자료로부터 정보의 수록 형태만 변경되었을 뿐 그 내용이 변개되거나 수정되지 아니한 상태로 공조조약 및 공조법이 정한 절차에 따라 수집되었고, 또한 그 출력과정에서도 변개나 수정의 여지가 없었다고 인정되는바, 원호텔, 벨라지오 호텔이 최초에 제출한 자료와의 동일성 및 무결성이 인정된다고 할 것이다.

(나) 도박 관련 증거들의 증거능력 판단

도박 관련 증거들은 공소사실을 입증하는 증거들로서 전문법칙이 적용되는바, 형사소송법 제315조에 의하여 당연히 증거능력이 있는지에 관하여 본다.

어떠한 문서가 형사소송법 제315조 제2호가 정하는 업무상 통상문서에 해당하는지를 구체적으로 판단함에 있어서는, 형사소송법 제315조 제2호 및 제3호의 입법 취지를 참작하여 ① 당해 문서가 정규적·규칙적으로 이루어지는 업무활동으로부터 나온 것인지 여부, ② 당해 문서를 작성하는 것이 일상적인 업무 관행 또는 직무상 강제되

---

54) 이선우는 증인신문시 자신이 전달받은 DVD 개수가 9장이라고 진술하였으나, 말미에 이를 8장으로 정정하여 진술하였다.




는 것인지 여부, ③ 당해 문서에 기재된 정보가 취득된 즉시 또는 그 직후에 이루어져 정확성이 보장될 수 있는 것인지 여부, ④ 당해 문서의 기록이 비교적 기계적으로 행하여지는 것이어서 기록 과정에 기록자의 주관적 개입의 여지가 거의 없다고 볼 수 있는지 여부, ⑤ 당해 문서가 공시성이 있는 등으로 사후적으로 내용의 정확성을 확인·검증할 기회가 있어 신용성이 담보되어 있는지 여부 등을 종합적으로 고려하여야 한다 (대법원 2015. 7. 16. 선고 2015도2625 전원합의체 판결 참조).

도박 관련 증거들(증거목록 1323-4, 5, 8, 9, 10의 각 문서, 다만 그 중 윈호텔, 벨라지오호텔의 IRS에 대한 회신서, IRS의 위 각 호텔에 대한 Summons는 제외한다)의 내용과 형식, 그로부터 추단되는 작성목적 등에 비추어 보면, 각 호텔 카지노 직원들은 고객 및 업장관리 등을 위하여 적시에 정확한 정보를 입력할 업무상 의무가 부여되어 있다고 봄이 상당하고, 이들은 고객이 카지노를 이용할 때마다 그때그때 일상적, 계속적, 기계적으로 카지노 영업관리용 프로그램에 고객 관련 정보(도박일시, 도박시간, 베팅금액, 이상 행동, 전용 비행기 요금 지급, 캐쉬아웃, 기타 매상 등)를 입력하여 마일리지 등을 관리하고, 디파짓한 수표, 여권, 비자 등을 사본하는 등 기록을 남겼을 것으로 추단된다. 특히 카지노 영업과 같이 다액의 매출을 올려주는 VIP고객의 관리가 중요하고 고객의 이상행동에 대하여 즉각적인 대응이 필요한 업종의 경우 정보가 취득된 즉시 또는 그 직후에 기록이 이루어져야 할 것으로 보이고, 그 기록과정에 기록자의 주관적 개입의 여지가 거의 없다고 할 것이어서, 문서 내지 기록의 성질에 비추어 고도의 신용성이 인정되어 반대신문의 필요가 없거나 작성자를 소환해도 서면제출 이상의 의미가 없는 것들에 해당한다고 판단되는바, 형사소송법 제315조 제2호 내지 제3호에 의하여 당연히 증거능력이 인정된다고 할 것이다.




한편, 도박 관련 증거들 중 증거기록 제40권 제75, 399면의 전산자료 화면은 카지노 직원들이 위와 같은 경위로 그때그때 정보를 입력한 영업관리용 프로그램으로부터 지정하는 조건에 따라 위 입력된 정보를 기초로 피고인의 방문일, 도박시간, 1판단 평균 베팅액 등이 표시되는 것으로 보이는바, 위 전산자료 화면은 앞서 본 업무상 작성되는 통상문서 내지 기타 특히 신용할 만한 정황에 의하여 작성된 문서로부터 추출된 것으로서 역시 제315조 제2호의 업무상 통상문서 혹은 제3호의 문서에 해당하여 당연히 증거능력이 인정되는 증거라 할 것이다.

나) 피고인에게 도박의 상습성이 인정되는지 여부

(1) 상습성의 표지

상습도박죄에 있어서의 '상습성'이라 함은 반복하여 도박행위를 하는 습벽으로서 행위자의 속성을 말하는데, 이러한 습벽의 유무를 판단함에 있어서는 도박의 전과나 도박횟수 등이 중요한 판단자료가 되나, 도박전과가 없다 하더라도 도박의 성질과 방법, 도금의 규모, 도박에 가담하게 된 태양 등의 제반 사정을 참작하여 도박의 습벽이 인정되는 경우에는 상습성을 인정하여도 무방하다(대법원 1995. 7. 11. 선고 95도955 판결 등 참조).

(2) 구체적 판단

피고인은 도박으로 처벌받은 전과는 없으나,[55] ① 아래 다)항에서 인정하는 바

---

[55] 피고인은 이 부분 공소사실 모두에 기재된 바와 같이 1990. 9. 26. 상습도박 및 외국환관리법위반 등으로 기소되었으나, 상습도박의 점에 대하여는 공소시효가 완성되었다는 이유로 공소기각의 판결을 선고받았고, '피고인이 89. 8. 4. 마카오에서 바카라 도박을 하면서 이석권으로부터 100만 홍콩 달러를 차용하여 도박으로 탕진하는 등 거주자 간의 외화채권 발생의 당사자가 되었다는 외국환관리법위반의 점 등은 유죄로 인정되어 징역 2년을 선고받고, 항소심에서 징역 1년에 집행유예 2년을 선고받아 그 판결이 확정되었는바, 도박으로 처벌받은 전과는 없고, 비록 외국환관리법위반 범죄사실에서 거주자간 외화채권 발생의 원인으로 도박에 따른 채무부담을 들고 있으나, 이는 이 부분 공소사실 중 최초의 도박일로부터도 11년 전의 일이어서 이 부분 공소사실에서의 도박의 습벽을 판단할 요소로 삼기 어렵다.





와 같이 2003년부터 2013년까지 2011년 미국 IRS의 조사를 받던 시기를 제외하고는 1년에 1회 꼴로 카지노를 방문하여 바카라도박을 한 점(2012년에도 미리 디파짓을 하였으나, 사정변경으로 방문하지 못한 것으로 보인다), ② 바카라 도박은 한 게임당 약 1분 정도가 소요되며 우연에 의하여 결과가 좌우되며 도박의 결과를 바로 알 수 있고 베팅금액이 커서 도박성이 매우 높은 점, ③ 아래 다)항에서 인정하는 피고인의 도박시간, 1판당 평균 베팅액[최소 5,000달러(피고인 자인 금액)에서 최대 약 22,000달러], 피고인의 디파짓액수 및 캐쉬아웃액수, 피고인이 도박으로 딴 돈과 잃은 돈의 규모[56], ④ 위 ③항으로부터 추단할 수 있는 전체적인 도금의 규모, ⑤ 피고인은 2005.경 벨라지오 호텔에서 고액베팅으로 카지노측의 감시대상에 오르기도 하였고 윈호텔 카지노에서 VVIP 고객에게 부여되는 플래티늄 등급의 고객인 점, ⑥ 피고인은 자신의 계좌뿐 아니라 2006. 8.경부터 2010. 9. 7.경까지 6회에 걸쳐 DKI 부외계좌로부터 수표를 인출하여 디파짓용도로 사용하였던 점 등에 비추어 보면, 피고인에게 도박의 습벽이 있다고 보지 않을 수 없다.

(3) 피고인의 주장에 관한 판단

피고인은 해외에서 열리는 행사참석이나 지사 방문을 위하여 미국 등 출장을 간 기회에 카지노에 들러 잠시 바카라를 하거나 고객을 접대하기 위하여 카지노에 간 것일 뿐이어서, 도박의 습벽이 없다고 주장한다.

그러나 피고인이 열거하고 있는 행사가 라스베가스에서 개최된 경우는 없었던 것으로 보이고, 라스베가스는 LA에서만도 비행기로 1시간 가량이 걸리는 곳이어서 도박의 습벽이 아니라면 굳이 방문 전에 디파짓까지 하고 카지노를 방문한다는 것을 납

---

56) 증거기록 제9권 제6600 내지 6608면, 피고인에 대한 피의자신문조서, 상세한 기재를 생략한다.

 

득하기 어렵다. 김종원은 검찰에서 '피고인이 2006년경부터 2013년경까지 윈호텔 카지

노를 방문할 당시 동행하였다'고 진술하고[57] 이는 피고인 및 김종원의 출입국내역

등[58]에 부합한다. 피고인은 2013. 10. 1. 김종원과 함께 LA에 왔다가 브라질에 다녀온

후 윈호텔 카지노에서 보내준 전용비행기를 타고 김종원과 함께 라스베가스로 갔을 뿐

그 무렵 피고인이 미국에서 브라질 제철사업 관련하여 브라질 인사들을 만나 접대를

한 적은 없었던 것으로 보이고,[59] 브라질에서 LA까지만도 항공편으로 12시간이나 소

요되어, 브라질 사람들이 LA를 방문할 가능성은 매우 낮았을 것으로 보이고, 브라질에

서는 제철소 사업을 반기는 분위기이므로 굳이 동국제강그룹의 회장인 피고인이 수행

원도 없이 이들을 라스베가스에서 접대할 필요도 없었을 것으로 보인다.

　다) 개별 도박사실 인정 여부

　(1) 2001년 및 2002년 벨라지오 호텔 카지노 도박

　검사가 제출한 증거들(피고인의 출입국내역, 피고인의 사증 사본, 2003년 이전

자료에 삭선이 그어져 식별이 불가능한 디파짓 내역)만으로는 이 부분 공소사실이 합

리적 의심 없이 인정된다고 보기 어렵다.

　(2) 2003년부터 2005년까지의 벨라지오 호텔 카지노 도박

　피고인의 출입국내역 및 당심이 적법하게 채택·조사한 증거들(증거기록 제40

권 제75, 151, 161 내지 164, 205 내지 208, 211, 212면)에 의하면, 이 부분 공소사실

---

57) 김종원에 대한 제7회 피의자신문조서
58) 김종원은 원심 법정에서 2013년에는 피고인이 브라질 손님들과 같이 갔고 자신은 다른 친구들과 갔다고 진술
　하였으나, 대한항공에 대한 사실조회회신결과에 의하면, 피고인과 김종원은 2013. 10. 1. 인천에서 미국 로스엔
　젤레스로 입국할 때와 10. 14. 로스엔젤레스에서 인천으로 입국할 때 같은 항공편을 이용하였음을 알 수 있고,
　이현희의 진술에 의하더라도 피고인이 브라질 출장에서 돌아와 윈호텔 카지노가 제공하는 전용비행기를 함께
　타고 라스베가스에 간 사람은 김종원으로 인정되며, 브라질 사업관계자 등 다른 동반자가 있었던 것으로 보이
　지 아니한다.
59) 피고인 및 김종원의 출입국내역, 대한항공에 대한 사실조회회신결과, 김종원 및 이현희의 각 검찰 진술




이 넉넉히 인정된다.

(3) 2006년부터 2013년까지의 윈호텔 카지노 도박

피고인의 검찰에서의 진술, 피고인의 출입국내역 및 당심이 적법하게 채택·조사한 증거들(증거기록 제40권 제327 내지 331, 380 내지 381, 399 내지 401면)에 의하면, 이 부분 공소사실이 넉넉히 인정된다[다만 전산화면상 도박시간이 시간적으로 중첩된 것으로 기재된 부분은 중첩된 시간을 제외한 시간을 도박시간으로 본다]

피고인은 피고인이 여러 테이블에서 중복하여 도박한 것으로 기재된 내역(증거기록 제40권 제400 내지 401면)에 비추어, 피고인의 동반자 등 다른 사람이 도박한 내역이 피고인에게 계상되어 있어 위 도박시간 전부를 피고인의 도박시간으로 볼 수 없으며, 결국 위 증거는 신빙성이 없다는 취지로 주장한다. 그러나, 도박 관련 증거들에 의하면, 도박장 내에 여러 개의 테이블이 있는 것으로 보이고, 1게임당 소요시간이 1분 정도로 짧은 바카라의 특성상 피고인이 여러 테이블을 옮겨 다니며 도박을 하였을 가능성이 큰 점, VIP로 관리되는 피고인에 대하여 다른 사람의 도박내역을 계상하였을 것으로는 보이지 아니하는 점, 피고인은 주로 김종원과 함께 카지노를 방문하였는데[60] 김종원은 룰렛이나 슬롯머신, 미니바카라를 하였던 것으로 보이고 달리 피고인과 함께 카지노에 방문하여 피고인의 계정으로 바카라 도박을 할 사람이 있었을 것으로 보이지 아니하는 점, 앞서 본 바와 같이 피고인이 수행원도 없이 라스베가스에서 브라질 사업 관계자를 접대하였을 것으로는 보이지 아니하는 점 등에 비추어 보면, 도박시간이 중첩된다는 사정만으로 위 증거의 증명력을 배척할 것은 아니다.

마. 밀스케일 관련 피해자 동국제강에 대한 특경법위반(배임)의 점(원심 무죄부분)

---

60) 김종원의 검찰 진술조서, 증거기록 제23권 제2584면




2. 피고인 장세주

나. 상습도박

1) 2003년 벨라지오 호텔 카지노 바카라 도박

(가) 피고인은 2003. 6. 16. 피고인의 미국 캘리포니아 미즈호 은행(Mizuho Corporation Bank of California) 계좌에서 인출한 500,000달러 상당의 수표를 위 벨라지오 호텔 카지노에 디파짓(deposit) 한 후, 디파짓 자금 등을 바카라 도박칩으로 교환하여 그 무렵부터 2003. 6. 19.까지 1판당 평균 15,198달러 약 1,740만 원[85] 상당을 배팅하며 바카라 도박을 하였다.

(나) 피고인은 2003. 10. 9. 위 벨라지오 호텔 카지노로부터 제공받은 VIP 전용 비행기를 통해 라스베가스로 이동하여 피고인의 위 미즈호 은행 계좌에서 인출한 500,000달러 상당의 수표를 위 벨라지오 호텔 카지노에 디파짓 한 후, 디파짓 자금 등을 바카라 도박칩으로 교환하여 그 무렵부터 2003. 10. 12.까지 1판당 평균 15,198달러 약 1,740만 원 상당을 배팅하며 바카라 도박을 하였다.

이로써 피고인은 2003. 6. 16.부터 19.까지, 10. 9.부터 12.까지 2회에 걸쳐 총 13시간 6분 동안 위 벨라지오 호텔 카지노에서 1판당 평균 15,198달러 약 1,740만 원 상당

---

85) 15,198달러×도박일 중 최저 기준 환율, 이하 1판당 평균 베팅액 원화 환산액은 동일한 기준으로 계산.





을 베팅하며 바카라 도박을 하였다.

2) 2004년 벨라지오 호텔 카지노 바카라 도박

피고인은 2004. 2. 4. 위 벨라지오 호텔 카지노로부터 제공받은 VIP 전용 비행기를 통해 라스베가스로 이동하여 피고인의 위 미즈호은행 계좌에서 인출한 500,000달러 상당의 수표를 위 벨라지오 호텔 카지노에 디파짓 한 후, 디파짓 자금 등을 바카라 도박칩으로 교환하여 그 무렵부터 2004. 2. 6.까지 총 8시간 11분 동안 1판당 평균 13,702달러 약 1,590만 원 상당을 베팅하며 바카라 도박을 하였다.

3) 2005년 벨라지오 호텔 카지노 바카라 도박

피고인은 2005. 1. 28. 위 벨라지오 호텔 카지노로부터 제공받은 VIP 전용 비행기를 통해 라스베가스로 이동하여 피고인의 위 미즈호 은행 계좌에서 인출한 1,000,000달러 상당의 수표를 위 벨라지오 호텔 카지노에 디파짓 한 후, 디파짓 자금 등을 바카라 도박칩으로 교환하여 그 무렵부터 2005. 2. 2.까지 총 13시간 15분 동안 1판당 평균 20,132달러 약 2,060만 원 상당을 베팅하며 바카라 도박을 하였다.

4) 2006년 윈(Wynn) 호텔 카지노 바카라 도박

피고인은 2006. 8. 11. DKI의 윌셔은행(Wilshire State Bank) 부외계좌(번호 8307105)에서 인출한 500,000달러 상당의 수표를 미국 네바다주 라스베가스에 있는 윈 호텔 카지노에 디파짓 한 후, 디파짓 자금 등을 바카라 도박칩으로 교환하여 그 무렵부터 2006. 8. 13.까지 총 11시간 45분 동안 1판당 평균 11,022달러 약 1,050만 원 상당을 베팅하며 바카라 도박을 하였다.

5) 2007년 윈 호텔 카지노 바카라 도박

가) 피고인은 2007. 2. 17. 위 윈 호텔 카지노에서 DKI의 위 윌셔은행 부외계좌




에서 인출한 300,000달러 및 피고인의 윌셔은행 계좌(번호 8111049)에서 인출한 500,000달러 합계 800,000달러 상당의 수표를 디파짓 한 후, 디파짓 자금 등을 바카라 도박칩으로 교환하여 그 무렵부터 2007. 2. 20.까지 총 약 6시간[86] 동안 1판당 평균 16,302달러 약 1,520만 원 상당을 베팅하며 바카라 도박을 하였다.

나) 피고인은 2007. 9. 29. 위 원 호텔 카지노에서 DKI의 위 윌셔은행 부외계좌에서 인출한 200,000달러 및 피고인의 위 윌셔은행 계좌에서 인출한 800,000달러 합계 1,000,000달러 상당의 수표를 디파짓 한 후, 디파짓 자금 등을 바카라 도박칩으로 교환하여 그 무렵부터 2007. 10. 2.까지 총 6시간 45분 동안 1판당 평균 17,000달러 약 1,550만 원 상당을 베팅하며 바카라 도박을 하였다.

6) 2008년 원 호텔 카지노 바카라 도박

피고인은 2008. 6. 18. 위 원 호텔 카지노에서 피고인의 위 윌셔은행 계좌에서 인출한 1,000,000달러 상당의 수표를 디파짓 한 후, 디파짓 자금 등을 바카라 도박칩으로 교환하여 무렵부터 2008. 6. 21.까지 총 약 25시간 동안[87] 1판당 평균 22,348달러 약 2,280만 원 상당을 베팅하며 바카라 도박을 하였다.

7) 2009년 원 호텔 카지노 바카라 도박

가) 피고인은 2009. 4. 20. 위 원 호텔 카지노에서 DKI의 위 윌셔은행 부외계좌에서 인출한 500,000달러 및 피고인의 위 윌셔은행 계좌에서 인출한 500,000달러 합계 1,000,000달러 상당의 수표를 디파짓 한 후 디파짓 자금 등을 바카라 도박칩으로 교환하여, 그 무렵부터 2009. 4. 22.까지 총 12시간 1분 동안 1판당 평균 18,506달러 약

---

86) 공소사실에 적시된 도박시간은 7시간 2분이나, 복수의 테이블에서 집계된 도박시간 중 시간적으로 중첩된 부분을 제외하고 재산정하였다. 이하 6)항, 7)의 나)항, 8)항에서 이와 같다.
87) 공소사실에 적시된 도박시간은 30시간 21분




2,450만 원 상당을 베팅하며 바카라 도박을 하였다.

나) 피고인은 2009. 10. 25. 위 원 호텔 카지노에서 DKI의 위 윌셔은행 부외계 좌에서 인출한 300,000달러 및 피고인의 위 윌셔은행 계좌에서 인출한 700,000달러 합계 1,000,000달러 상당의 수표를 디파짓 한 후, 디파짓 자금 등을 바카라 도박칩으로 교환하여 그 무렵부터 2009. 10. 29.까지 총 약 21여 시간 동안[88] 1판당 평균 15,737 달러 약 1,860만 원 상당을 베팅하며 바카라 도박을 하였다.

8) 2010년 원 호텔 카지노 바카라 도박

피고인은 2010. 9. 8. 위 원 호텔 카지노에서 DKI의 위 윌셔은행 부외계좌에서 인출한 500,000달러 및 피고인의 위 윌셔은행 계좌에서 인출한 500,000달러 합계 1,000,000달러 상당의 수표를 디파짓 한 후 디파짓 자금 등을 바카라 도박칩으로 교환하여, 그 무렵부터 2010. 9. 11.까지 총 약 24여 시간 동안[89] 1판당 평균 20,361달러 약 2,380만 원 상당을 베팅하며 바카라 도박을 하였다.

9) 2013년 원 호텔 카지노 바카라 도박

피고인은 2012. 10. 5. 피고인의 위 윌셔은행 계좌에서 라스베가스 원 호텔 카지노 VIP고객들을 관리하는 람바스 클럽(Rambas Marketing LL.C.)의 계좌로 200,000달러를 이체하였다.

피고인은 2013. 10. 10. 피고인의 미국 계좌를 관리하는 DKI 소속 직원 이현희에게 지시하여 피고인의 미국 HSBC은행 계좌(번호 269-03372-6)에서 1,000,000달러를 500,000달러 수표 2장으로 인출한 후, 위 람바스 클럽에서 한국 등 아시아계 VIP 고객을 담당하는 '찰리 킴'에게 VIP 게임룸을 이용할 수 있는 도박자금에 대한 소명 자료로

---

88) 공소사실에 적시된 도박시간은 25시간 49분
89) 공소사실에 적시된 도박시간은 25시간 28분





서 위 수표 사본을 팩스로 전송하는 방법으로 VIP 게임룸을 예약하고, 위 수표들을 직접 소지한 채 원 호텔 카지노 VIP 고객에게 제공되는 전용비행기를 이용하여 로스엔젤레스에서 라스베가스로 이동한 후, 그 무렵부터 2013. 10. 13.까지 위 카지노 VIP룸에서 위 1,000,000달러 및 위 2012. 10. 5.자 람바스 클럽 계좌 이체 자금 200,000달러 합계 1,200,000달러를 디파짓하고 그 디파짓 자금 등을 바카라 도박칩으로 교환하여 바카라 도박을 하였다.

이로써 피고인은 2003.부터 2013.까지 총 12회에 걸쳐 미국 라스베가스에 있는 벨라지오 호텔 카지노 및 원 호텔 카지노에서 상습으로 바카라 도박을 하였다.

---

90) 292,065달러 × 당시 기준 환율.