## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

————————————————————
**DONGKUK INTERNATIONAL, INC.,** )
***et al.*,** )
 )
 **Plaintiffs,** )
 **v.** )
 ) **C.A. No. 1:16-cv-01584-APM**
**DEPARTMENT OF JUSTICE,** )
 )
 **Defendant.** )
————————————————————)

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

The Court should deny Plaintiffs' Motion for Preliminary Injunction ("Plaintiffs' Motion") (ECF No. 4), which essentially demands immediate disclosure of a letter from the Korean Ministry of Justice to the U.S. Department of Justice requesting legal assistance pursuant to a Mutual Legal Assistance Treaty, because Plaintiffs fall far short of demonstrating their entitlement to the extraordinary relief they are seeking and cannot satisfy any of the four factors necessary for a preliminary injunction.

## STATEMENT OF THE CASE

On August 4, 2016, Plaintiffs filed their Complaint in this case. ECF No. 1. That same day, Plaintiffs filed a Motion for Preliminary Injunction. ECF No. 4. The United States Attorney's Office was served with Plaintiffs' Complaint and Motion on August 5, 2016. ECF No. 9.

Plaintiffs' Complaint states that it is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief, seeking, principally, the immediate production of the Republic of Korea Ministry of Justice's ("Korean

MOJ") Request for Assistance letter ("RFA Letter") to the DOJ regarding its investigation of Sae-Joo Chang. ECF No. 1 at 1-2. The RFA Letter was sent and utilized pursuant to the Treaty with the Republic of Korea on Mutual Legal Assistance in Criminal Matters ("MLAT"), entered into force May 23, 1997. A copy of the MLAT is attached as Exhibit 3 to Plfs. Complaint. Plaintiffs speculate that the RFA Letter may contain exculpatory evidence that they might be able to utilize in Chang's appeal of his criminal conviction in Korea for habitual gambling.

On November 19, 2015, Sae-Joo Chang was convicted in South Korea under Korean law of habitual gambling as well as other offenses related to embezzlement. Jang Decl. ¶ 3 & Exh. 3. In May 2016, the Seoul High Court, which Plaintiffs describe as an intermediate appellate court, upheld the judgment. *Id*. ¶ 5. Chang has appealed his conviction to the Korean Supreme Court, and his counsel speculates that a final judgment on the appeal will be rendered by September 20, 2016. *Id*. ¶ 9. Chang's counsel also speculates that the Korean prosecutors may have lied about the contents of the RFA Letter to the Korean courts, and states his belief that the RFA Letter might be beneficial to his client's appeal. *Id*. ¶ 6.

On December 2, 2015, Plaintiffs submitted a FOIA request to DOJ seeking:

> The evidence received by the U.S. Department of Justice ("DOJ") from the U.S. Attorney's Office for the Central District of California consisting of a cover letter prepared by Assistant U.S. Attorney Charles E. Pell dated October 22, 2015 and 8 DVDs of data, and forwarded, pursuant to Article 7 of the Treaty with the Republic of Korea on Mutual Legal Assistance in Criminal Matters, to Mr. Jung Jinwoo, Director of the International Criminal Affairs Division in the Republic of Korea's Ministry of Justice. The documents being sought are further described in the enclosed letter dated November 9, 2015 from Samer Korkor, DOJ Trial Attorney, to Mr. Jung Jinwoo.

Cunningham Decl. ¶ 7; *se also* ECF No. 4-10. Via phone call and email on or about June 14, 2016, Plaintiffs' counsel informed an attorney at DOJ's Office of International Affairs that Plaintiffs would limit their FOIA request to the RFA Letter. Colwell Decl. ¶¶ 16-17 & ECF No. 4-11; *see also* Cunningham Decl. p. 3 n. 1 (noting a similar email from Plaintiff's counsel

narrowing the FOIA request to just that one document on June 24, 2016).

On or about June 30, 2016, prior to receiving a response to their FOIA request, Plaintiffs filed an appeal under the FOIA. Cunningham Decl. ¶ 9; Colwell Decl. ¶ 19. On July 1, 2016, the Criminal Division electronically informed Plaintiffs' legal counsel that the appeal had been forwarded to the Office of Information Policy ("OIP"), which adjudicates administrative appeals of denials of FOIA/PA requests made to DOJ. Cunningham Decl. ¶ 9. In addition, by letter dated July 8, 2016, the Criminal Division acknowledged the receipt of Plaintiffs' December 2, 2015 FOIA request, noted that due to an inadvertent administrative error Plaintiffs' request was not logged until June 24, 2016, and explained that Plaintiffs' FOIA request had been placed in the queue as if it had been received on December 3, 2016. *Id*. at ¶ 8. With respect to Plaintiffs' appeal, by letter dated July 28, 2016, OIP informed Plaintiffs that DOJ regulations provide for an administrative appeal to OIP only after there has been an adverse determination by a component, and, as no adverse determination had yet been made by the Criminal Division, there was no action for OIP to consider on appeal. *Id*. at ¶ 10.

On or about July 28, 2016, Plaintiffs requested expedited processing solely as to the RFA Letter. Cunningham Decl. ¶ 11; Colwell Decl. ¶ 27 & ECF No. 4-16. By letter dated August 2, 2016, the Criminal Division informed Plaintiffs' legal counsel that the request for expedited treatment had been denied because the Plaintiffs had failed to establish that their request fits within any of the four U.S. Department of Justice standards for expedited treatment. Cunningham Decl. ¶ 12.

On July 14, 2016, the FOIA/PA Unit sent OIA a request to search for documents responsive to Plaintiffs' FOIA request. Cunningham Decl. ¶ 13. On August 8, 2016, the FOIA/PA Unit received one document, totaling twenty-two pages, from OIA which was

responsive to Plaintiffs' FOIA request. *Id.* By letter dated August 12, 2016, the Criminal

Division informed Plaintiffs' legal counsel that the Criminal Division was withholding in full

one document, totaling twenty-two pages pursuant to FOIA Exemptions (b)(3), (b)(5), (b)(6) and

(b)(7)(C), and (b)(7)(D). *Id.*

## LEGAL STANDARD FOR PRELIMINARY INJUNCTION

"The purpose of a preliminary injunction is merely to preserve the relative positions of

the parties until a trial on the merits can be held." *Chaplaincy of Full Gospel Church v. England*,

454 F. 3d 290, 297 (D.C. Cir. 2006) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395

(1981)); *see also Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014). Here, however,

Plaintiffs seek an injunction that would require Defendant to produce records on an expedited

basis "immediately." *See* Pls. Mot. at 1. Plaintiffs are seeking to drastically alter the status quo,

and they face "an additional hurdle" in proving their entitlement to relief. *Paleteria La*

*Michoacana, Inc., et al. v. Productos Lacteos Tocumbo S.A. de C.V.*, 901 F. Supp. 2d 54, 56-57

(D.D.C. 2012) (quoting *King v. Leavitt*, 475 F.Supp.2d 67, 71 (D.D.C. 2007)); *see also id.* at 57

("The court concludes that the defendant thus seeks to alter—not preserve—the status quo.

Accordingly, the court will exercise extreme caution in assessing the defendant's invitation to

invoke the court's extraordinary equitable powers.").

At a minimum, preliminary injunctive relief, as an extraordinary form of relief, "should

not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Banks v.*

*Harrison*, 864 F. Supp. 2d 142, 145 (D.D.C. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S.

968, 972 (1997)) (internal citations omitted). In its determination of whether the Plaintiffs should

be entitled to the preliminary injunctive relief that they are seeking, the Court examines whether

the movants have demonstrated that:

(1)    there is a substantial likelihood that the plaintiffs will succeed on the merits;
(2)    plaintiffs will be irreparably injured if an injunction is not granted;
(3)    an injunction will not substantially injure the other party; and
(4)    the public interest will be furthered by an injunction.

*Barton v. District of Colum.*, 131 F. Supp. 2d 236, 241 (D.D.C. 2001) (additional citations omitted); *see also Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *Gordon v. Holder*, 632 F.3d 722, 724 (D.C. Cir. 2011). Traditionally, courts have analyzed those factors on a "sliding scale," balancing them against each other. *Barton*, 131 F. Supp. 2d at 241 (citing *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)) (citations and quotation omitted). Under that approach, the "four factors are not considered in isolation from one another, and no one factor is necessarily dispositive as to whether preliminary injunctive relief is warranted." *Id.* But as this Court has recognized, "[r]ecently, the continued validity of that approach has been called into some doubt, as the . . . [D.C.] Circuit has suggested, without holding, that a likelihood of success on the merits is an independent free-standing requirement for a preliminary injunction." *TD Bank NA v. Pearl*, 891 F. Supp. 2d 103, 106 (D.D.C. 2012). Judges in this Circuit have also suggested that "a party moving for a preliminary injunction must meet [all] four independent requirements." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J. & Henderson, J., concurring). In this case, Plaintiffs have not satisfied any of the four preliminary injunction criteria, and their motion does not satisfy either standard.

I.    **Plaintiffs Cannot Show that They Have a Substantial Likelihood of Success on the Merits.**

In their preliminary injunction motion, Plaintiffs use classic straw-man tactics to argue that the RFA Letter is not subject to withholding under FOIA. First they create a false and/or mistaken government position, *i.e.*, they claim that DOJ informally notified them that the RFA

5

Letter is subject to FOIA Exemptions 7(B) and 7(D), and then they proceed to attempt to refute that false position. In actuality, the Criminal Division has properly withheld the RFA Letter in question in full pursuant to FOIA Exemptions 3, 5, 6, 7(C), and 7(D), and Plaintiffs' likelihood of success in this action is virtually nil.

The document at issue in this case is an MLAT request, dated April 7, 2015, from the Korean MOJ to the U.S. DOJ relating to a Central Authority of the Republic of Korea investigation of Plaintiff Sae-Joo Chang for possible violations of Korean law. Cunningham Decl. ¶ 16. It reveals factual information possessed by the Central Authority of the Republic of Korea at the time the MLAT request was executed, as well as the Korean Prosecution Service's legal theories of the case. *Id.* The document outlines the history of legal or law enforcement actions previously taken against Chang, sets forth a summary of the facts and evidence of their investigation, explains the statutory basis for the alleged criminal offenses, provides personal information regarding the subject of the investigation, and outlines the assistance requested and the procedures to be followed when performing said assistance. *Id.* In addition, the Korean Prosecution Service asked that the MLAT request, as well as the evidence obtained through such assistance, be treated as confidential. *Id.*

### a.    Exemption 3

FOIA Exemption 3 exempts information from disclosure when another federal statute prohibits its disclosure, provided that the statute either "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the

existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007) (internal quotation marks omitted).

In this case, as a Senate-ratified treaty, the MLAT between the United States and Korea has the status of statutory law. *See Pub. Citizen v. Office of the U.S. Trade Representative*, 804 F.Supp. 385, 388 (D.D.C. 1992) (refusing to apply Exemption 3 because the applicable provisions of the General Agreement on Tariffs and Trade were not part of Senate-ratified treaties and therefore did not have the status of statutory law); *see also* ECF 1-3 (MLAT was signed by the United States on November 23, 1997, and ratified by the Senate on May 23, 1997). Furthermore, the MLAT between the United States and the Republic of Korea specifically prohibits DOJ from providing a copy of the RFA Letter or disclosing its contents. Article 5, Paragraph 5 of the MLAT specifies that, "[t]he Requested State shall use its best efforts to keep confidential a request and its contents if such confidentiality is requested by the Central Authority of the Requesting State." ECF 1-3, p. 7. The Korean MOJ has specifically requested that the RFA Letter be kept confidential, and the provision plainly applies here. Cunningham Decl. ¶ 19.

Plaintiffs may attempt to argue that Article 7 of the MLAT permits disclosure, but this argument ignores the plain language of the Treaty. Article 7, entitled Limitations on Use, states:

> 1.      The Requesting State shall not use any information or evidence obtained under this Treaty in any investigation, prosecution, or proceeding other than that described in the request without the prior consent of the Requested State.
> 2.      The Central Authority of the Requested State may request that information or evidence furnished under this Treaty be kept confidential in accordance with conditions which it shall specify. In that case, the Requesting State shall use its best efforts to comply with the conditions specified.
> 3.      Information or evidence which has been made public in the Requesting State in accordance with paragraph 1 or 2 may thereafter be used for any purpose.

ECF No. 1-3, p. 7. Paragraph 1 and 2 of Article 7 refer to information or evidence obtained or furnished under the Treaty—not to a Request for Assistance letter, which, according to Article 5, ¶ 5, must be kept confidential if requested by the Requesting State. Thus, even if it is true that the Korean prosecuting authorities made representations to the court and/or to Chang in Korea about the contents of the RFA Letter during Chang's prosecution, Article 7, ¶ 3 of the MLAT does not excuse DOJ's obligation to keep the request and its contents confidential pursuant to Article 5.

### b.      Exemption 5

Exemption 5 of FOIA protects "inter-agency or intra agency memorandum or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Materials may be withheld under Exemption 5 under both the deliberative process privilege and the attorney work product privilege. *See, e.g., Miller*, 562 F. Supp. 2d at 114-15; *Heggestad*, 182 F. Supp. 2d at 8-12.

Where the communications are neither "inter-" nor "intra-agency," but are between a government agency and a party possessing common litigation interests, courts apply the common interest doctrine to satisfy the threshold requirement of Exemption 5. *See, e.g., Durham v. U.S. Dep't of Justice*, 829 F.Supp. 428, 433 (D.D.C. 1993) (citing *United States v. American Tel. and Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980); *Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 277-80 (4th Cir. 2010); *In Re Lindsay*, 158 F.3d 1263, 1282 (D.C. Cir. 1998). Here, the RFA Letter at issue represents joint international law enforcement efforts undertaken by parties having a common legal interest in sharing information and evidence related to criminal investigations and prosecutions. Cunningham Decl. ¶ 24. In their request for assistance, the Ministry of Justice for the Republic of Korea discloses the legal and factual basis of its investigation and seeks assistance from its counterpart in the United States. The United States in

turn provides assistance both from a desire to comply with our treaty obligations and from a common interest in the prosecution of transnational crime. *Id*. Because the communications are between a Government agency (the Department of Justice) and a party possessing common litigation interests (the Ministry of Justice for the Republic of Korea), Exemption 5 applies.

The attorney work-product privilege is incorporated into Exemption 5 and serves to protect documents and other memoranda prepared by an attorney in contemplation of litigation. *See Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947); Fed. R. Civ. P. 26(b)(3); *SafeCard Services, Inc. v. S.E.C.*, 926 F.2d 1197, 1202 (D.C. Cir. 1991); *Abuhouran v. U.S. State Dep't*, 843 F. Supp. 2d 73, 79-80 (D.D.C. 2012). Records may be withheld as attorney work product if they contain the "mental impressions, conclusions, opinions or legal theories of an attorney" and were "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3); *see Miller v. U.S. Dep't of Justice*, 562 F. Supp. 2d 82, 115 (D.D.C. 2008) (concluding that documents which "reflect such matters as trial preparation, trial strategy, interpretation, personal evaluations and opinions pertinent to [plaintiff's] criminal case" qualify as attorney work product under Exemption 5); *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 8 (D.D.C. 2000) (stating that the attorney work product privilege "covers factual materials prepared in anticipation of litigation, as well as mental impressions, conclusions, opinions, and legal theories"). Factual material and deliberative material within the document are both protected. *See Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 371 (D.C. Cir. 2005) ("[F]actual material is itself privileged when it appears within documents that are attorney work-product."); *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1185-86 (D.C. Cir. 1987) ("The work-product doctrine simply does not distinguish between factual and deliberative material.").

The RFA Letter qualifies as attorney work-product that normally would be protected in

the civil discovery context because it was prepared by an attorney in contemplation of litigation. It was prepared by or at the direction of an attorney, a Korean prosecutor, in anticipation of the prosecution of Plaintiff Sae-Joo Chang by Korean authorities. Cunningham Decl. ¶ 25. The document contains a description of the nature and subject matter of the pending investigation in the Republic of Korea; statements of factual basis and applicable provisions of law for each offense; descriptions of the type of evidence and information they are seeking to obtain from the United States; and statements of purpose for which the evidence, information, or other assistance is sought. *Id*. As such, the RFA Letter contains the legal analysis of a Korean prosecutor, his or her theory of the case being investigated and evaluation of the evidence, and his or her assessments of facts and issues pertaining to the request for assistance. *Id*. ¶ 26. Public release of this information would inhibit essential investigative and decision making processes, and the attorney work-product privilege was properly invoked.

The deliberative process privilege is also incorporated into Exemption 5 and serves to cover agency records that are both predecisional and deliberative. *See Horowitz v. Peace Corps*, 428 F.3d 271, 276 (D.C. Cir. 2005); *Miller v. U.S. Dep't of Justice*, 872 F. Supp. 2d 12, 23 (D.D.C. 2012). Predecisional documents are those "'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)). "Material is deliberative if it 'reflects the give-and-take of the consultative process.'" *Petroleum Info. Corp.*, 976 F.2d at 1434 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). To demonstrate that the record is pre-decisional, the agency must identify the deliberative process involved, and the role played by the records in the course of that

process. *Miller*, 872 F. Supp. 2d at 23-24. To show that the record is deliberative, the agency must demonstrate that it "makes recommendations or expresses opinions on legal or policy matters." *Id.*, at 24 (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975) (*en banc*)).

The RFA Letter also qualifies under Exemption 5 pursuant to the deliberative process privilege because it is both predecisional and deliberative. The document contains information provided by the Korean government to the United States to assist in DOJ's determination regarding whether to grant the request for assistance. Cunningham Decl. ¶ 27. The document outlines the type of evidence sought and contains recommendations for procedures to be followed in fulfilling the request for assistance. *Id.* In addition, the document reflects the deliberations of the Korean prosecutor regarding the status of his or her investigation. *Id*. The information contained in the record expresses the author's opinion regarding the sufficiency of the evidence to support the offenses being investigated and it considers the applicability of the evidence and information maintained by the United States to the offenses being investigated in the Republic of Korea. *Id*. Quite clearly, release of this information could have a chilling effect on frank and open discussions with foreign law enforcement partners and undermine collaborative international law enforcement efforts as well as the candid exchange of ideas and analysis necessary to conduct a thorough criminal investigation. *Id*.

Notably, another district court recently addressed a similar issue with respect to requests for assistance pursuant to an MLAT and the applicability of Exemption 5. *See Lucaj v. FBI*, Case No. 14-12635, 2016 WL 319525 (E.D. Mich. Jan. 27, 2016). In *Lucaj*, the plaintiff challenged the withholding under FOIA of two requests for assistance: one from the United States Office of International Affairs ("OIA") to the Central Authority of Austria, and another from OIA to an

undisclosed foreign government. The district court granted summary judgment in favor of the government, holding that both the attorney work-product and deliberative process privilege prongs of Exemption 5 apply to such documents and protect them from disclosure. *Id*. at *5-6.

  c.  **Exemption 6 and 7(C)**

  FOIA Exemption (b)(6) permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" is broadly construed and includes "Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."); *Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010). In assessing the applicability of Exemption (b)(6), courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004). "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)) (alterations in original); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). "Information that 'reveals little or nothing about an agency's own conduct' does not

further the statutory purpose." *Beck*, 997 F.2d at 1492.

As a threshold matter, FOIA Exemption (b)(7) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information" would result in one of six specified harms. 5 U.S.C. § 522(b)(7). In this case, the Criminal Division invoked Exemption (b)(7)(C) to withhold information compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In assessing whether records are compiled for a law enforcement purpose pursuant to this exemption, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotation marks omitted). In this case, there is no dispute that the RFA Letter at issue pertains to a criminal investigation of Plaintiff Chang. Cunningham Decl. ¶ 30. Because the Criminal Division and the Ministry of Justice of the Republic of Korea were both acting jointly as collaborative law enforcement agencies, and the RFA Letter was created by or at the behest of the Ministry of Justice of the Republic of Korea in accordance with their law enforcement functions, the document at issue here meets the threshold requirement of FOIA Exemption (b)(7). *See Miller*, 872 F. Supp. 2d at 24-25.

When invoked in relation to information in law enforcement records, Exemption 6 covers essentially the same information as Exemption 7(C); however, as the privacy language of Exemption 7(C) is broader than the comparable language in Exemption 6, "the standard for evaluating a threatened invasion of privacy interests resulting from disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to

personnel, medical, and similar files." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989); *see also Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 210 (D.D.C. 2010).

Specifically, Exemptions 6 and 7(C) apply to the names, telephone numbers and email addresses of employees and prosecutors from the Korean Ministry of Justice involved in the investigation of Mr. Chang, as well as the names, dates of birth, addresses and passport information of other third-parties found in the RFA Letter. Cunningham Decl. ¶ 31. The Korean MOJ employees and other third-parties maintain strong privacy interests in this information, and no public interest exists that overrides these individual privacy interests. *Id.* ¶ 33. Because these individuals have not consented to the release of the requested information, disclosure would reasonably be expected to result in an unwarranted invasion of their personal privacy, and the Criminal Division justifiably withheld this information pursuant to Exemptions 6 and 7(C).

### d.      Exemption 7(D)

Exemption 7(D) prevents disclosure of records "compiled by criminal law enforcement authorit[ies] in the course of a criminal investigation" if producing the records "could reasonably be expected to disclose the identity of a confidential source" or "information furnished" by such a source. 5 U.S.C. § 552(b)(7)(D). "[A] source is confidential within the meaning of 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993) (quoting S. Rep. No. 93-1200, at 13, U.S. Code Cong. & Admin. News pp. 6267, 6291). Exemption 7(D) applies even when the source's identity is no longer a secret. *See Bullock v. FBI*, 577 F. Supp. 2d 75, 80 (D.D.C. 2008) (citing *Irons v. FBI*, 880 F.2d 1446, 1448 (1st Cir. 1989) ("The words 'furnished by a confidential source' do not mean that the

information or the identity of the source is secret; they simply mean that the information was 'provided in confidence' at the time it was communicated.") (internal citations omitted)). Foreign law enforcement agencies or officials can be confidential sources covered by Exemption 7(D). *See* 5 U.S.C. § 552(b)(7)(D) (confidential sources include "a State, local, or foreign agency or authority . . . which furnished information on a confidential basis); *see also Blackwell v. FBI*, 680 F. Supp. 2d 79, 95 (D.D.C. 2010); *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 48-49 (D.D.C. 2009). "Unlike Exemptions 6 and 7(C), Exemption 7(D) requires no balancing of public and private interests." *Roth v. United States DOJ*, 642 F.3d 1161, 1184-85 (D.C. Cir. 2011). If a record falls within Exemption 7(D), "that ends the matter." *Id.*

In this case, the RFA Letter was created by the Government of the Republic of Korea, acting as a law enforcement authority in collaboration with the United States to obtain documentary evidence related to Plaintiff Sae-Joo Chang's violations of Korean law. Cunningham Decl. ¶ 35. The RFA Letter contains a request for confidentiality for the MLAT request itself, as well as the evidence obtained through the request. *Id*. Thus, the document is also subject to withholding pursuant to Exemption 7(D).

Accordingly, because Exemptions 3, 5, 6, 7(C), and 7(D) all apply to the RFA Letter and are likely to authorize withholding of the document, Plaintiffs have little to no likelihood of succeeding on the merits in this case.

## II.    Plaintiffs Cannot Show Irreparable Injury.

Plaintiffs complain that Chang will suffer irreparable injury if he is "unable to utilize this critical evidence in support of his appeal." Pls. Mot. At 19. However, the impact of the RFA Letter on Chang's appeal is purely speculative, and not sufficient to establish that Plaintiffs are suffering irreparable harm, or that any such harm would be cured by an injunction. *See Safari*

*Club Int'l v. Jewell*, 47 F. Supp. 3d 29, 35 (D.D.C. 2014) (citing *Wis. Gas Co. v. FERC*, 758 F.2d

669, 674 (D.C. Cir. 1985)) ("Irreparable harm must be great and certain, not speculative.").

According to Plaintiffs' own attorney in Korea, "the Korean MOJ . . . represented to

[Chang's attorney] and the court that the RFA Letter pursuant to the MLAT specifically

requested 'materials related to money laundering and casino gambling of Sae Joo Chang." Jang

Decl. ¶ 5. Presumably attorneys practicing in Korea have a duty of candor to the tribunal similar

to attorneys practicing here. Furthermore, the intermediate appellate court in Korea found that

"the procedure of collecting evidence related to gambling including the mutual legal assistance

in criminal matters procedure is found to be lawful, and it is probable to consider the evidences

collected by such procedures as lawfully collected evidences." ECF No. 4-4, page 7 of 41. This

finding was based, in part, on the court's examination of "[a] request written in English for

mutual legal assistance in criminal matters made to the U.S. Department of Justice in the name of

the Minister of Justice presented at the court on the 5th trial date of this court," which

"confirmed that the agency requesting mutual assistance, suspect (Sae Joo Chang) and the crime

(D. Habitual Gambling) are written." *Id*. p. 8 of 41. Based solely on the Korean MOJ's refusal to

provide him with a copy of the RFA Letter, Plaintiff's Korean attorney speculates that the RFA

Letter did not actually include a reference to gambling offenses, despite all evidence to the

contrary. Jang Decl. ¶ 6. Thus, Plaintiff has not and cannot show irreparable injury from the

failure to disclose the RFA Letter.

### III.   The Government's Interests Would be Harmed, and the Public Interest Would Not be Served by the Grant of Injunctive Relief.

The third and fourth factors also weigh heavily against granting injunctive relief.  As

discussed above, granting the preliminary injunctive relief that Plaintiffs seek would alter, rather

than preserve, the status quo. The RFA Letter at issue was sent pursuant to an MLAT, which

specifies that the country receiving the request for assistance must use its best efforts to keep the request and its contents confidential if such confidentiality is requested by the other party. Requiring DOJ to turn over the document despite the confidentiality request would violate the letter and spirit of the Treaty, and undermine collaborative international law enforcement efforts between the countries. That is plainly against the public interest. Because Plaintiffs seek such radical relief on a preliminary basis, the Court should "exercise extreme caution in assessing [Plaintiffs'] invitation to invoke the court's extraordinary equitable powers." *Paleteria*, 901 F. Supp. 2d at 57.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' Motion for Preliminary Injunction (ECF No. 4).

Dated: August 12, 2016          Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
United States Attorney

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division

By:   */s/ Jason T. Cohen*
JASON T. COHEN, ME Bar #004465
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
Phone: (202) 252-2523
Email: Jason.Cohen@usdoj.gov

*Attorneys for Defendant*