UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Dongkuk International, Inc.,** *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil No. 16-cv-01584 (APM) |
| ) | |
| **U.S. Department of Justice,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

### I.   INTRODUCTION

This case presents a novel question: Is a request for assistance made by a foreign government under a Mutual Legal Assistance Treaty (MLAT) subject to public disclosure under the Freedom of Information Act (FOIA)? Plaintiffs Dongkuk International, Inc., and Sae-Joo Chang seek a verified copy of portions of a Request for Assistance letter (the "RFA Letter") sent by the Korean Ministry of Justice to Defendant United States Department of Justice (DOJ) pursuant to an MLAT between the United States and the Republic of Korea. The information that DOJ produced pursuant to the RFA Letter led to the prosecution and conviction in Korea of Plaintiff Sae-Joo Chang for the offense of habitual gambling. During his prosecution, the Ministry of Justice refused to disclose the RFA Letter, although it did make certain representations to the Korean courts about its contents. Plaintiffs now seek through FOIA what they could not obtain in Korea—a copy of the RFA Letter itself.

This matter comes before the court on Plaintiffs' Motion for Preliminary Injunction. The parties have agreed, however, under Federal Rule of Civil Procedure 65(a)(2), to consolidate the motion for injunctive relief with the ultimate decision on the merits. The court therefore need not

consider the non-merits elements of a motion for injunctive relief—*i.e.*, irreparable harm, the balance of equities, and the public interest. Instead, the court need only decide which party prevails on the merits under FOIA.

Defendant DOJ has asserted that a host of exemptions justify withholding the RFA Letter from Plaintiffs, but the court need only consider one: Exemption 3. As pertinent here, Exemption 3 requires an agency to withhold from disclosure any information that is "specifically exempted from disclosure by statute . . . , if that statute . . . refers to particular types of matters to be withheld." The court concludes that the MLAT between the United States and the Republic of Korea qualifies as a "statute" for purposes of Exemption 3 and that the RFA Letter is a "particular type[ ] of matter[ ] to be withheld" under the MLAT. Therefore, Exemption 3 applies.

The court is not persuaded by Plaintiffs' contention that the limited disclosure made by the Ministry of Justice to the Korean courts regarding the RFA Letter's contents constitutes an official public acknowledgment of those contents, such that DOJ's invocation of Exemption 3 is deemed waived. Our Court of Appeals has squarely stated that a "foreign government [ ] cannot waive a federal agency's right to asset a FOIA exemption." *Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015). Accordingly, the court denies Plaintiffs' Motion for Preliminary Injunction.

## II.     BACKGROUND

### A.     MLAT Between the United States and the Republic of Korea

In November 1993, the United States and the Republic of Korea signed a treaty on mutual assistance in criminal matters, conventionally referred to as an "MLAT" ("U.S.-Korea MLAT" or "MLAT"). *See* Treaty with the Republic of Korea on Mutual Legal Assistance in Criminal Matters [hereafter U.S.-Korea MLAT], 1993 WL 796842, Nov. 23, 1993; *see also* U.S. Sen., 104th Cong.,

2d Sess., Executive Report No. 104-22 [hereinafter Sen. Ex. Rept. 104-22], at 1 (1996).[1] The purpose of the U.S.-Korea MLAT is to "provide for the sharing of information and evidence related to criminal investigations and prosecutions, including drug trafficking and narcotics-related money laundering." Sen. Ex. Rept. at 1. The United States Senate ratified the U.S.-Korea MLAT on August 2, 1996. *See* 142 Cong. Rec. S9661-02, 1996 WL 438434, at *S9661 (Aug. 2, 1996). The treaty entered into force on May 23, 1997, upon the countries' exchange of instruments of ratification. *See* U.S. Dep't of State, *Treaties in Force*, at 168 (2013).[2]

Article 4 of the U.S.-Korea MLAT enables the "Central Authority" in each country—the Attorney General in the United States, and the Minister of Justice in Korea—to request assistance from the other Central Authority. Such a Request for Assistance ordinarily must be in writing and include the following: (1) "the name of the authority conducting the investigation, prosecution, or proceeding to which the request relates"; (2) "a description of the subject matter and the nature of the investigation, prosecution, or proceedings, including the specific criminal offenses which relate the mater"; (3) "a description of the evidence, information, or other assistance sought"; and (4) "a statement of the purpose for which the evidence, information, or other assistance is sought." U.S.-Korea MLAT, arts. 3, 4.

Under the U.S.-Korea MLAT, the Central Authority that seeks legal assistance, referred to as the "Requesting State," can ask its counterpart, known as the "Requested State," that its Request for Assistance be kept confidential. Article 5, paragraph 5 provides: "The Requested State shall use its best efforts to keep confidential a request and its contents if such confidentiality is requested by the Central Authority of the Requesting State." *Id.* art. 5, ¶ 5. That paragraph continues: "If the request cannot be executed without breaching the requested confidentiality, the Central

---

[1] Available at https://www.gpo.gov/fdsys/pkg/CRPT-104erpt22/pdf/CRPT-104erpt22.pdf (last visited Aug. 30, 2016).
[2] Available at http://www.state.gov/documents/organization/218912.pdf (last visited Aug. 30, 2016).

Authority of the Requested State shall so inform the Central Authority of the Requesting State, which shall then determine whether the request should nevertheless be executed." *Id.*

Article 7 of the U.S.-Korea MLAT addresses a different topic: Limitations placed on the use of evidence or information obtained under the MLAT.  Paragraph 1 of that article provides: "The Requesting State shall not use any information or evidence under this Treaty in any investigation, prosecution, or proceedings other than that described in the request without the prior consent of the Requested State." *Id.* art. 7, ¶ 1.  Paragraph 2 allows a Requested State to place limits on the public disclosure of the information or evidence obtained.  It states:  "The Central Authority of the Requested State may request that information or evidence furnished under this Treaty be kept confidential in accordance with conditions which it shall specify.  In that case, the Requesting State shall use its best efforts to comply with the conditions specified." *Id.* art. 7, ¶ 2. And, finally, Article 7 provides that "[i]nformation or evidence which has been made public in the Requesting State in accordance with paragraph 1 or 2 may thereafter be used for any purpose." *Id.* art. 7, ¶ 3.

> **B.** **Korea's Request for Assistance**

In 2015, the Seoul Central District Prosecutor's Office commenced a criminal proceeding against Plaintiff Sae-Joo Chang for the crime of "habitual gambling." *See* Mot. for Preliminary Injunction, ECF No. 4 [hereinafter Pls.' Mot.], Ex. 4, Decl. of Gabriel Colwell, ECF No. 4-6 [hereinafter Colwell Decl.], ¶ 10.  With some exceptions, Korean law prohibits Korean nationals from gambling both within and outside the territory of the Republic of Korea.  *Id.*, Ex. 1, Decl. of Jongchul Jang, ECF No. 4-1 [hereinafter Jang Decl.], ¶ 3.  On April 1, 2015, the Seoul Central District Prosecutor's Office asked the Korean Ministry of Justice to seek evidence from the United

States concerning, among other things, Chang's gambling at casinos in the United States. *Id.*, Ex. 3, ECF No. 4-4, at 7.

On April 7, 2015, the Ministry of Justice sent to DOJ a Request for Assistance letter under the U.S.-Korea MLAT. *Id.* ¶ 4; Def.'s Mem. in Opp'n, ECF No. 13 [hereinafter Def.'s Opp'n], Decl. of John Cunningham, ECF No. 13-1 [hereinafter Cunningham Decl.], ¶ 16. Consisting of 22 pages, the RFA Letter, generally speaking, contained "factual information possessed by the Central Authority of the Republic of Korea . . . , as well as the Korean Prosecution Service's legal theories of the case." Cunningham Decl. ¶¶ 16, 18. It also detailed the history of the legal actions taken against Chang, a summary of the facts and evidence of the Korean government's investigation, the statutory basis for the alleged criminal offenses, personal information concerning Chang, and the specific assistance requested. *Id.* ¶ 16. Importantly for present purposes, "the Korean Prosecution Service asked that the MLAT request, as well as the evidence obtained through such assistance, be treated as confidential." *Id.*

On November 9, 2015, in response to the RFA Letter, DOJ disclosed relevant information and evidence to the Korean Ministry of Justice. Jang Decl., ¶ 4, Ex. 2, ECF No. 4-3. Among the evidence that DOJ produced were documents relating to Chang's gambling practices at the Wynn and Bellagio casinos in Las Vegas, Nevada. *Id.* ¶ 4. The Korean prosecutors used that evidence as part of their successful efforts to convict Chang for habitual gambling. *Id.* During the proceedings, the Korean prosecutors represented to the Seoul High Court—the trial court before which Chang was convicted—that the RFA Letter specifically sought evidence relating to money laundering and casino gambling by Chang. *Id.* ¶ 5. They also provided the court with a summary of the RFA Letter, but not a copy of the letter itself. *Id.* ¶ 6. The prosecution, however, never

produced a copy of the RFA Letter to Chang's Korean defense counsel.  *Id.*  The Seoul High Court sentenced Chang to 42 months in prison, which he is presently serving.  Colwell Decl. ¶ 13.

In May 2016, an intermediate appellate court affirmed Chang's conviction.  Jang. Decl. ¶ 5.  As part of its decision, the appellate court held that the prosecution had lawfully collected the evidence it obtained through the RFA Letter and had used to prosecute Chang.  *Id.*, Ex. 3 at 5-10.  In so ruling, the court "confirmed" that the prosecution had told the trial court that the RFA Letter had identified habitual gambling as an alleged criminal offense under investigation.  *Id.* at 8.

### C. Plaintiffs' FOIA Request

In early December 2015, Plaintiffs Chang and Dongkuk International, Inc.—Chang is the former Chairman and CEO of Dongkuk International's parent company, Dongkuk Steel Mill Co. Ltd.—submitted a request to DOJ for records under FOIA.  Colwell Decl. ¶ 14.  The FOIA request sought, in sum, all evidence turned over by DOJ to the Korean Ministry of Justice pursuant to the RFA Letter.  *Id.*, Ex. 4, ECF No. 4-10.  Plaintiffs later narrowed their request for disclosure to only one document:  the RFA Letter itself.  *Id.* ¶ 17.  DOJ lawyers orally advised Plaintiffs' counsel that DOJ could not provide the RFA Letter under the terms of the U.S.-Korea MLAT and DOJ policy and that the letter likely would be subject to FOIA exemptions.  *Id.* ¶¶ 18, 23.  DOJ did not, however, provide Plaintiffs with a written explanation for withholding the RFA Letter.  *Id.* ¶¶ 29-32.

### D. Plaintiffs' Motion for Preliminary Injunction

Having not received a formal denial of their request from DOJ, Plaintiffs filed their Complaint in this case on August 4, 2016, *see* Compl., ECF No. 1, along with a Motion for Preliminary Injunction, *see* Pls. Mot.  Plaintiffs sought immediate disclosure of the RFA Letter so

that it could be used in Chang's latest appeal, which is pending before the Korean Supreme Court, the country's highest court.  Jang. Decl. ¶¶ 7-10.

According to Plaintiffs, disclosure of the RFA Letter is critical to Chang's appeal, and potentially could provide a drastic reduction in his sentence.  *Id.* ¶ 7.  Chang's defense counsel in that case "suspects" that Korean prosecutors misled DOJ about the scope of their investigation and their intent to prosecute Chang for gambling in Las Vegas.  *See* Pls.' Mot. at 8; Jang. Decl. ¶ 6 (stating that he is "highly suspicious that the Korean [Ministry of Justice] did not actually include a reference to gambling offenses in the [Request for Assistance] Letter" because the "Korean [Ministry of Justice] refused to provide me a copy" of the letter).  Specifically, Plaintiffs hope to show that the RFA Letter did *not* specify the alleged violation of Korea's habitual gambling laws as grounds for the request.  Plaintiffs theorize that, if the RFA Letter was deficient in such respect, then the Korean prosecutor's use of the evidence of gambling provided by the United States would have been unlawful.  Such use would be illegal because, absent prior consent, the U.S.-Korea MLAT only permits the Requesting State to use the acquired evidence for a proceeding or investigation that is "described in the request." *Id.* (quoting U.S.-Korea MLAT ¶ 7).  By showing that the Korean prosecutors (1) failed to identify habitual gambling by Chang as grounds for their request and thereby unlawfully used the evidence obtained from the United States, and (2) made misrepresentations to the Korean courts about the scope and basis for the Request for Assistance, Plaintiffs hope to convince the Korean Supreme Court to vacate Chang's conviction or reduce his sentence.  Pls.' Mot. at 10.  Chang's Korean counsel anticipates that the Korean Supreme Court could rule on Chang's appeal as soon as September 20, 2016.  Jang Decl., Ex. 4, ECF No. 4-5, at 3-4.

At the preliminary injunction hearing on this matter, the parties agreed, under Federal Rule of Civil Procedure 65(a)(2), to consolidate Plaintiffs' motion for an injunction with the case on the merits. *See* Draft Hr'g Tr. at 2. The court, therefore, need only consider the merits of the parties' dispute.

### III. LEGAL STANDARD

It is the government agency's burden to prove that it has complied with its obligations under FOIA. *DOJ v. Tax Analysts*, 492 U.S. 136, 142 n. 3 (1989). To prevail on a motion for summary judgment—or, as here, to defeat a motion for preliminary injunction—the agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir.1978); *see also Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir.2001). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter *de novo*.'" *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). A court may rely on the information included in the agency's affidavits or declarations if they are "relatively detailed and non-conclusory," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citations and internal quotation marks omitted), and describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

IV.     DISCUSSION

Defendant has offered a number of exemptions under FOIA—Exemptions 3, 5, 6, 7(C), and 7(D)—to justify its withholding of the RFA Letter in full or in part.  *See* Def.'s Opp'n at 4. The court, however, need only focus on one:  Exemption 3.

Exemption 3 permits an agency to withhold a record that is "specifically exempted from disclosure by statute" if the statute at issue: "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3). Thus,

> Exemption 3 divides existing statutes authorizing the withholding of information into two categories:  Those which Congress has mandated that information be withheld 'in such a manner as to leave no discretion on the issue' are placed in subsection (A), and the remaining statutes are placed in subsection (B), which 'necessarily contemplates some exercise of administrative discretion.'

*Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Retirement Bd.*, 830 F.2d 331, 334 (D.C. Cir. 1987) (quoting *Church of Scientology of Cal. v. U.S. Postal Serv.*, 633 F.2d 1327, 1330 (9th Cir. 1980)).

> Subsection (B) is in turn divided into two disjunctive parts:  The first ('B-1') consists of statutes in which discretion may be exercised in favor of withholding information that would otherwise be subject to disclosure; and the second ('B-2') consists of statutes that 'refer[ ] to particular types of matters to be withheld.'

*Id.*  Statutes in the latter category—those falling under B-2—"will consist of highly specific, limited categories of information."  *Id.*

Our Court of Appeals has observed that "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of the specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage."  *Goland v. CIA*, 607 F.2d at 350.  Thus, courts are required to ask two questions when evaluating whether Exemption 3 applies:  "Does the statute meet Exemption

9

3's requirements? And does the information that was withheld fall within that statute's coverage?" *Labow v. DOJ*, No. 14-5220, 2016 WL 4150929, at * 2 (D.C. Cir. Aug. 5, 2016) (citation omitted). Here, of those two questions, only the first—whether the U.S.-Korea MLAT is a statute that satisfies Exemption 3's requirements—requires extended discussion.

      A.      Is the U.S.-Korea MLAT a "Statute" for Purposes of Exemption 3?

Before addressing whether the U.S.-Korea MLAT meets Exemption 3's requirements, the court in this case must ask a predicate question: Is the U.S.-Korea MLAT a "statute" that can be analyzed under Exemption 3? Plaintiffs argue that it is not. *See* Pls.' Supp. Authority, ECF No. 20 [hereinafter Pls.' Supp.]. The court concludes otherwise.

Exemption 3 on its face only covers matters that are "specifically exempted from disclosure *by statute*." 5 U.S.C. § 552(b)(3) (emphasis added). The U.S.-Korea MLAT is not, of course, strictly speaking a statute. It is, instead, a bilateral treaty ratified by the Senate. But such treaties are equivalent to an act of the legislature, as the Supreme Court explained in *Medellin v. Texas*, 552 U.S. 491 (2008). For that reason, the U.S.-Korea MLAT qualifies as a "statute" for purposes of Exemption 3.

In *Medellin*, the Court distinguished between treaties that automatically have the effect of domestic law and those that, although constituting an international law commitment, do not by themselves function as binding federal law. *Id.* at 504 (stating "not all international law obligations automatically constitute binding federal law enforceable in the United States courts"). A treaty is "'equivalent to an act of the legislature,'" and is thus self-executing, "when it 'operates of itself without the aid of any legislative provision.'" *Id.* at 504-05 (quoting *Foster v. Neilson*, 2 Pet. 253, 314 (1829)). By contrast, when "'[treaty] stipulations are not self-executing they can only be enforced pursuant to legislation to carry them into effect.'" *Id.* (quoting *Whitney v. Robertson*,

124 U.S. 190, 194 (1888)). The Court defined a "self-executing" treaty as one that "has automatic domestic effect as federal law upon ratification[ ]"; in contrast, whether a non-self-executing treaty has "domestic effect depends upon implementing legislation passed by Congress." *Id.* at 505 n.2. Thus, the Court summarized, "while treaties 'may comprise international commitments . . . they are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention to be 'self-executing' and is ratified on these terms.'" *Id.* at 505 (quoting *Igartua-De La Rosa v. United States*, 417 F.3d 145, 150 (1st Cir. 2005) (en banc)).

The text of the U.S.-Korea MLAT makes clear that it is a self-executing treaty. *See id.* at 506 ("The interpretation of a treaty, like the interpretation of a statute, begins with its text."). Article 20 provides that the MLAT shall be "subject to ratification" and shall "enter into force upon the exchange of instruments of ratification." U.S.-Korea MLAT, Art. 20. The MLAT does not contemplate that either country will require any implementing legislation to effectuate its terms. The treaty is thus self-executing.

Various aides to interpretation—namely, the letters of transmittal to and from the President and a Senate Executive Report—confirm this reading. *See Medellin*, 552 U.S. at 507 (using "aids to [ ] interpretation" to interpret a treaty) (citation omitted). Secretary of State Strobe Talbot submitted the U.S.-Korea MLAT to President Clinton on November 17, 1994. Talbot's letter accompanying the submission made clear that "[t]he Treaty is designed to be self-executing and will not require implementing legislation."[3] On January 12, 1995, the President transmitted the MLAT to the Senate. He, too, made clear in his transmittal letter that "[t]he Treaty is self-executing."[4] Finally, the Senate Executive Report, prepared by the Senate Committee on Foreign

---

[3] Available at *https://www.congress.gov/treaty-document/104th-congress/1/document-text* (last visited Aug. 30, 2016).
[4] *Id.*

11

Relations, echoed both the President's and Secretary of State's representations about the MLAT. It stated: "For the United States, the Treaty is intended to be self-executing; no new legislation is needed to carry out United States obligations under the Treaty." Sen. Ex. Rept. 104-22, *supra* n.1, at 18. In view of its text and the foregoing interpretative aides, there can be little doubt that the U.S.-Korea MLAT is a self-executing treaty, and that, upon ratification by the Senate, it became binding domestic law and thus equivalent to an act of the legislature. The MLAT therefore qualifies a "statute" for purposes of FOIA Exemption 3.

Plaintiffs offer two contrary arguments. First, they point out that, under the OPEN FOIA Act of 2009, Congress amended Exemption 3 by adding a new requirement that any statute "enacted after the date of enactment of the OPEN FOIA Act of 2009"—October 28, 2009—must "specifically cite to this paragraph." Pub. Law No. 111-83, Title V, § 564(b) 123 Stat. 2142, 2184 (2009). *See* Pls. Supp. at 2. Plaintiffs acknowledge that the 2009 amendment does not apply to the U.S.-Korea MLAT because it was ratified long before the amendment's effective date. Nevertheless, they contend that Congress could not have intended for MLATs in general to qualify as "statutes" under Exemption 3, because no MLAT signed by the United States *after* 2010—there are three such treaties, with Kazakhstan, Jordan, and Algeria—specifically mentions Exemption 3. *See* Pls.' Supp. at 2.

While creative, Plaintiffs' argument does not alter the court's conclusion. The Senate has yet to ratify any of the three MLATs identified by Plaintiff.[5] Accordingly, none at present have the effect of domestic law and therefore would not in any event qualify as a "statute" for purposes of Exemption 3. Moreover, the court is reluctant to draw any inference as to Congress' intent with

---

[5] The Senate Foreign Relations Committee has ordered all three to be reported to the full Senate and remain on the Senate's Executive Calendar. *See* http://www.senate.gov/legislative/LIS/executive_calendar/xcalv.pdf (last visited Aug. 30, 2016).

respect to the treatment under Exemption 3 of MLATs signed and ratified before 2009 from MLATs signed but not yet ratified after that date. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117 (1980) (stating the "oft-repeated warning that 'the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one'") (citation omitted); *Wilson v. Block*, 708 F.2d 735, 750 (D.C. Cir. 1983) ("We are aware that subsequent legislative history is not controlling evidence of the intent underlying previously enacted legislation.").

Plaintiffs offer a second, statistics-based argument. They contend that, "since the enactment of the OPEN FOIA Act of 2009, the Attorney General has only reported three (3) instances where DOJ has invoked a MLAT as a non-disclosure statute under FOIA Exemption 3" and, in each of those instances, the information withheld was "evidence" obtained pursuant to Article 7 of an MLAT treaty. In other words, DOJ has not since 2009 invoked Exemption 3 with regards to a Request for Assistance letter under Article 5 of an MLAT treaty. Pls.' Supp. at 2. From those facts, Plaintiffs argue that "the aforementioned is evidence that Article 5 of the [U.S.-Korea MLAT] is not a withholding statute for purposes of FOIA Exemption 3." *Id.* at 3. The cited statistics, however, are of limited probative value. The fact that, since 2009, DOJ has invoked Exemption 3 to withhold only evidence subject to an MLAT tells the court nothing about whether *Congress* intended for the U.S.-Korea MLAT to enable DOJ to withhold other information pertaining to the MLAT. Moreover, it is also possible that there have been no FOIA demands for Request for Assistance letters since 2009, and this case is the first. DOJ certainly has invoked Exemption 3 in this case and asserts that it is applicable to requests for assistance.

### B. Does the U.S.-Korea MLAT Meet Exemption 3's Requirements?

Having resolving that the U.S.-Korea MLAT is a "statute" for purposes of Exemption 3, the court turns to the question of whether it meets the requirements of Exemption 3. *See Labow*, 2016 WL 4150929, at * 2. Recall that a statute satisfies Exemption 3 if it either "(i) requires that the matters be withheld from the public in such manner as to leave no discretion on the issue" or "(ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A). The U.S.-Korea MLAT satisfies the latter criteria in that it "refers to a particular type[ ] of matter[ ] to be withheld," namely, requests for assistance.[6] Article 5, paragraph 5 provides that the "Requested State shall use its best efforts to keep confidential *a request and its contents* if such confidentiality is requested by the Central Authority of the Requesting State." U.S.-Korea MLAT, Art. 5, ¶ 5 (emphasis added). That degree of specificity in identifying a "matter to be withheld"—"a request and its contents"—is at least as specific as other statutes that the Court of Appeals has held to satisfy Exemption 3's requirements. *See Labow*, 2016 WL 4150929, at * 2 (citing cases); *See Lam Lek Chong v. DEA*, 929 F.2d 729, 733 (D.C. 1991) (citing cases).

Moreover, Congress' ratification of a treaty that obligates the United States to use its "best efforts" to maintain the confidentiality of requests for assistance dictates that it be treated as a withholding statute under Exemption 3. *See Lam Lek Chong*, 929 F.2d at 733 ("Subsection (B)'s second prong is intended to reach those statutes in which Congress itself has manifested a determination that certain specified material should remain confidential."). Indeed, the importance

---

[6] DOJ in its brief asserted that the U.S.-Korea MLAT qualifies under subsection (A)(i) as a statute that "requires that the matters be withheld from the public in such manner as to leave no discretion on the issue." *See* Def.'s Opp'n at 6-8. The court doubts whether a "best efforts" confidentiality requirement can be read as discretion-stripping provision. The court need not, however, resolve that issue because it concludes that the second part of subsection (A)(ii) applies.

of the "best efforts" provision is underscored by the requirement that the Requested State inform the Requesting State if the Request for Assistance cannot be executed without breaching the asked-for confidentiality, so as to give the Requesting State the choice whether to proceed with the request or not. *See* U.S.-Korea MLAT, Art. 5, ¶ 5; *see also* Sen. Exec. Rept. at 19 (emphasizing that Article 5, paragraph 5's notice provision "enables a Requesting State to withdraw the request rather than risk jeopardizing its investigation or proceeding by public disclosure of the information"). Given this emphasis on maintaining confidentiality of assistance requests, the court doubts that Congress intended for them to be available under FOIA.

Once the U.S.-Korea MLAT is deemed an exempting statute, the second question the court must ask—if the information withheld falls within the statute's coverage, *see Labow*, 2016 WL 4150929, at *2—is answered easily. The RFA Letter at issue in this case is the very type of "request" document that the United States must use its "best efforts" to keep confidential pursuant to Article 5, paragraph 5. The court, therefore, holds that DOJ has properly invoked Exemption 3 to withhold the RFA Letter.

   **C.** **Was the RFA Letter Officially Acknowledged by the Korean Ministry of Justice, Such That DOJ's Invocation Exemption 3 is Deemed Waived?**

Plaintiffs spend much energy trying to convince the court that DOJ cannot withhold the RFA Letter because the Korean Ministry of Justice made certain disclosures about its contents—specifically, that it contained a demand for information related to casino gambling by Chang—to the Korean courts. *See* Pls.' Mot. at 15-16; Pls.' Reply, ECF No. 14, at 2-4. But the court easily rejects that assertion. Our Court of Appeals has said unequivocally: "[A] foreign government [ ] cannot waive a federal agency's right to assert a FOIA exemption." *Mobley*, 806 F.3d at 583.

Thus, the Korean Ministry of Justice's representations to the Korean courts cannot constitute a waiver of DOJ's right to invoke Exemption 3.

In addition, Plaintiffs also have not satisfied the elements of the "official acknowledgment" test. When information has been "officially acknowledged," its disclosure may be compelled even over an otherwise valid exemption claim. *See id.* To demonstrate official acknowledgment of the information sought, the plaintiff bears the burden of showing: (1) "the information requested [is] as specific as the information previously released"; (2) "the information requested match[es] the information previously disclosed"; and (3) "the information requested [ ] already ha[s] been made public through an official and documented disclosure." *Id.* (citation omitted).

Plaintiffs here have not met the first two prongs. Only a "summary" of the RFA Letter, and not the actual letter, was disclosed to the Korean trial court. *See* Jang. Decl. ¶ 6. Moreover, the portion of the intermediate court's decision from which Plaintiffs quote—footnote 45,which identifies certain material "requested with priority," *see* Pls.' Mot. at 9, 16—is not from the RFA Letter itself, but from an earlier letter that the Seoul Central District Prosecutor's Office sent to the Ministry of Justice, which asked the Ministry of Justice to make an MLAT request to the United States. *Id.*, Ex. 3 at 7. Simply put, Plaintiffs have not shown that the information previously disclosed is as specific as, or matches, the information that they now demand. Finally, as already noted, a foreign government disclosure does not qualify as an "official and documented" disclosure under the official-acknowledgment test. Plaintiffs thus also have failed to establish the third prong of the test.

Plaintiffs also argue, relying on Article 7 of the U.S.-Korea MLAT, the Korean Ministry of Justice's summary disclosure to the Korean Court means that the RFA Letter can "be used for any purpose," including in response to a FOIA request. Article 7 does not, however, help

Plaintiffs. Requests for assistance are governed by Article 5, which does not contain a similar "use for any purpose" provision. U.S.-Korea MLAT, art. 5. Article 7's "use for any purpose" provision applies only to "information or evidence obtained under this Treaty"—that is, the information or evidence disclosed by the Requested State—and not to the procedural precursor to such disclosure, the Request for Assistance letter from a Requesting State. *Id.*, art. 7. Accordingly, the Korean Ministry of Justice's disclosures to the Korean court do not entitle Plaintiffs to the RFA Letter, in full or in part.[7]

## V.  CONCLUSION

For the foregoing reasons, the court denies Plaintiffs' Motion for Preliminary Injunction. The court also denies Plaintiffs' Motion for Summary Judgment, even though Defendant has not yet responded to it.

Dated: August 31, 2016

Amit P. Mehta
United States District Judge

---

[7] At the preliminary injunction hearing, Plaintiffs asked the court to review the RFA letter *in camera*. Dr. Hr'g Tr. at 31. The court sees no need for such review.